THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* DWIGHT HAGADORN et al., Respondents.

Where an action to recover damages for the alleged unlawful taking of timber cut from land of which plaintiff has not the actual possession, is based wholly upon a constructive, possession arising out of his claim of title to the land, defendant may contest the validity of such title.

The proceedings by which the annual assessment-roll of a town is to be formed, being specially pointed out by statute, whenever the requirements are material they must be strictly pursued to validate a sale of property under the warrant.

The duty imposed upon the board of supervisors of the county requires not only that it shall establish a ratio upon which the tax is to be based, but also, that it shall compute and enter in the roll, in a column opposite the valuation of real and personal estate, the amount of tax levied thereon; this must be done under the supervision of the board, and before the roll can be certified to as completed.

The duty of passing upon the question of a corrected assessment-roll, and certifying to its accuracy and completeness as a perfected roll, is a judicial duty which cannot be delegated.

Where, therefore, it appeared that a board of supervisors fixed the ratio of tax upon the aggregate amount of valuation, and without extending the tax, signed the roll and attached the collector's warrant thereto, and delivered it to the supervisor of the town, with authority to compute and enter the amount of the tax, which he did, and then delivered the roll and warrant to the collector. *held,* that the roll and warrant were fatally defective ; that a return of the non-payment of taxes so levied conferred no authority upon the State comptroller to sell land thus taxed, and that the State as a purchaser at such a sale acquired no title.

Where the comptroller has in his hands unpaid reported taxes for a number of years upon a piece of land, some of which are legal and some invalid, he may not enforce the payment of the illegal taxes by

taking proceedings to collect the legal ones; he cannot compel the owner of the land in order to regain possession of his property to pay a sum of money which the State has no right to demand.

A sale, therefore, of the land for the taxes of several years, one or more of which is illegal and void, is an excess of jurisdiction and void.

Also *held*, where the State claimed title to lumber cut from land bid in for it, at such a sale, that proof of the comptroller's deed, having as against the State shown that it had once parted with its original property therein, and assumed to sell the land as that of a citizen for taxes, it was precluded from claiming that its original proprietorship ,still remained.

(Argued February 3, 1887; decided March 1, 1887.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made June 29, 1885, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial without a jury. (Reported below, 36 Hun, 610.)

This action was brought to recover the value of certain lumber manufactured from logs cut by defendants from certain lands in Fulton county, to which plaintiff claimed title under a comptroller's deed on sale of the land for unpaid taxes.

The facts, so far as material, are stated in the opinion.

*Denis O'Brien*, attorney-general, for appellant. The trial court erred in holding that the comptroller's deed was void because the board of supervisors of Fulton county, in the years 1868, 1869 and 1870, did not themselves perform the clerical work of inserting in the tax-roll, in each of said years, the amount of the tax levied and determined upon by them to be raised upon the taxable property of the town, but instructed the supervisor to do such work, and the same was done by him in strict accordance with their instructions before the tax-roll and warrant for the collection of the tax were delivered to the collector. (*Talmadge* v. *Board of Sup'rs of Rens. Co.*, 21 Barb. 611; *Coleman* v. *Shattuck*, 62 N. Y. 348; *S. C.*, 5 T. & C. 34; *Bradley* v. *Ward*, 58 id. 401; *Overing* v. *Foote*, 43 id. 290; *First Nat. Bk.* v. *Waters*, 9 Fed. 152, 158; *Heft* v. *Gephart*, 65 Penn. St. 510; *Hubbard* v. *Winsor*, 15 Mich. 146; *Powell* v. *Tuttle*, 3 N. Y. 396; *Commercial Bk.* v. *Norton*,

1 Hill, 501; *Grinnell* v. *Buchanan*, 1 Daly, 538; *People* v. *Bk. of N. A.*, 76 N. Y. 547; *Parish* v. *Golden*, 35 id. 462; *Westfall* v. *Preston*, 49 id. 349; *Carr* v. *Shipman*, 6 Barb. 621; *Dows* v. *Village of Irvington*, 66 How. 93; *Price* v. *Peters*, 15 Abb. Pr. 197; *Sherman* v. *Trustees*, 27 Hun, 390.) The lands being wild and unoccupied, and the defendant not being in possession or connecting himself with any party claiming possession, the people of the State, in their right of sovereignty, are presumed to be the owners and to have a legal title. (Gerard's Titles to Real Estate, 9; *People* v. *Arnold*, 4 N. Y. 508; *Wendell* v. *Jackson*, 8 Wend. 312; *People* v. *Dennison*, 17 id. 312; *People* v. *Rector, etc., Trinity Church*, 22 N. Y. 44; *Lyon* v. *Sellew*, 34 Hun, 124.) The lands having been sold for the unpaid taxes of 1866 and 1867, which were concededly regular and valid, the comptroller had jurisdiction to sell, and the sale was not vitiated because taxes of other years, defectively assessed, were included. (*Parish* v *Golden*, 35 N. Y. 462; *Denman* v. *McGuire*, 17 N. Y. Week. Dig. 504; *Sheldon* v. *Wright*, 5 N. Y. 497; *Skinnion* v. *Kelly*, 18 id. 355; *Simpson* v. *Burch*, 4 Hun, 315; *Wood* v. *Knapp*, 100 N. Y. 109.) The defendant in an action of trover cannot defeat the plaintiff's recovery by showing an outstanding title in a third person, unless he connects himself with that title. (*Kissam* v. *Roberts*, 6 Bosw. 154; *Duncan* v. *Spear*, 11 Wend. 57; *Daniels* v. *Brown*, id. 57; *Rogers* v. *Arnold*, 12 id. 30, 36; *Stowell* v. *Otis*, 71 N. Y. 36.)

*George W. Smith* for respondents. The extending of the tax by the supervisor, acting individually after the adjournment of the board, even though he was furnished with a ratio for computation, was more than a clerical act. It was the final act for fixing a tax lien on the property, which could only be legally done by the board in session, and which required the sanction of the whole board to give it authority and validity. (*Bellinger* v. *Gray*, 51 N. Y. 610; *Bradley* v. *Ward*, 58 id. 40; *Thompson* v. *Burhans*, 61 id. 62, 65; *Merritt* v. *Portchester*, 29 Hun, 619; *Johnson* v. *Ellwood*, 53 N. Y. 433;

*Hill* v. *Draper*, 10 Barb. 454.) If the plaintiffs fail to show title to the land they must fail as to the logs, as they give no other proof of ownership or possession. In trespass *de bonis* or trover, the plaintiff had to show title or right of possession, though defendant showed none. (*Aiken* v. *Buck,* W. R. 446; *Hurd* v. *West,* 7 Cow. 752; *Shelden* v. *Soper,* 14 J. R. 352; *Hoyt* v. *Van Alstyne,* 15 Barb. 568; *Thompson* v. *Burhans, supra; Sinclair* v. *Jackson,* 8 Cow. 543; *Johnson* v. *Elwood,* 53 N. Y. 453, 454.) The defendants, though strangers to the title, may object to the want of title in the plaintiff. (*Sinclair* v. *Jackson, supra; Thompson* v. *Burhans, supra; Johnson* v. *Elwood,* 53 N. Y. 131; *Beekman* v. *Bingham,* 5 id. 366.) The plaintiff must recover, if at all, on the strength of its own title, and not by reason of any want of right in the defendants. (*Hill* v. *Draper,* 10 Barb. 454.)

RUGER, Ch. J. The pleadings in this case on both sides seem to be inartificially drawn, and if the proper objections had been taken it is by no means certain, that a defense could have been proved, but under the liberal rules established by the Code of Civil Procedure, and the course of the trial, we are constrained to determine the case upon the facts proved, and the issue thus apparently made and tried.

Not only the complaint but also the answer was argumentative in character. The plaintiff deducing its title to the lumber in dispute, as the result of its alleged ownership of the lands, and the defendants' claiming to have controverted the fact of such ownership, as the necessary consequence of their denials of the plaintiff's title.

The plaintiff did not claim to have had actual possession of the land, or of the lumber in dispute, but based the action wholly upon a constructive possession, arising out of its claim to be the real owner of the land. The defendants controverted this fact of possession by proof, and when possession is relied on to sustain the action, it was always competent for a defendant, in an action of trover, to show that the plaintiff did not have possession. If, however, the plaintiff had once established

the fact of possession, it would have been incompetent for the defendant to show title in a third person without connecting himself with it. All parties assumed the sufficiency of the defendant's answer, and the trial proceeded upon the theory that the action depended upon the validity of the comptroller's deed under which the plaintiff claimed.

No material objection was raised to any of the evidence offered by the defendants, and no question made throughout the trial upon the form, sufficiency or effect of the defendants pleading.

The plaintiff claimed that the proof of the comptroller's deed established its title to the land, and that the right of possession of lumber cut thereon followed as a necessary deduction from such title, and the defendants contended that the plaintiff never had possession, or the right thereto, because the deed shown by it, had no legal validity.

The plaintiff's right of recovery having been thus made to rest exclusively upon the validity of its title, and the legal inferences to be drawn therefrom, we must examine the objections to the comptroller's deed, with a view of determining whether its title was thus established.

It was admitted on the trial that the sale under which the comptroller assumed to execute the deed in question, was based upon the non-payment and return of taxes on the land in question, for the years 1866 to 1870, both inclusive. The defendants thereupon gave evidence, without objection, tending to show that for the years 1868, 1869 and 1870, the board of supervisors for Fulton county had never computed, entered or extended upon the annual assessment-rolls, the aggregate amount of the town and county tax, levied upon any of the lands in Stratford, Fulton county, for either of the years named.

It appeared that the supervisor for that town after the final adjournment of the board of supervisors, and after they had signed and attached the collectors warrant to the uncompleted assessment-roll, carried the same home, and in the absence of the board of supervisors, computed the amount

of the tax for each of the years in question, upon the several pieces of land therein described, and entered it in the roll, and, as thus filled out, handed the roll and warrant to the collector for collection.

It was also proved that the board of supervisors before adjourning had, in each year, fixed the ratio of tax upon the aggregate amount of valuation, and had authorized the supervisor of the town to compute and enter the amount of the tax in the roll.

We are quite clear that this proceeding constituted a fatal irregularity in the proceedings to levy the taxes in question. The proceedings by which the annual assessment-roll is to be formed are specially pointed out in the statute, and whenever the requirements are material, they cannot safely be omitted by the officers charged with their performance.

It is an elementary rule that public officers, exercising the right of selling the property of the citizen, by statutory authority are required to pursue the requirements of the statute strictly. Thus the statute requires that the town assessors, shall make annual enumeration and assessment of the persons and property, liable to taxation in the several towns, and enter the same upon an assessment-roll, consisting of four columns; in the first of which shall be entered the names of taxable inhabitants; in the second, the quantity of land to be taxed to each person; in the third, the value of such land, and in the fourth the value of personal property. When the roll is sworn to by the assessors, and thus prepared for the action of another body, it is to be delivered to the supervisor, for transportation to the board of supervisors. The board of supervisors is then required, after equalizing valuations in the several assessment-rolls in the county, to prepare a fifth column upon the assessment-roll and estimate and set down therein, opposite to the several sums set down as the valuation of real and personal estate, the respective sums in dollars and cents, rejecting the fractions of a cent, to be paid as a tax thereon. (2 R. S. [7th ed.], 990–997, §§ 9, 27, 33.)

It is also required to deliver the corrected assessment-roll, or a fair copy thereof, to the collectors of the respective towns, and before doing so to annex tc such roll a warrant under their respective hands and seals, commanding them to collect from the several persons named in the assessment-roll, the several sums mentioned in the last column of such roll opposite their respective names (2 R. S. § 36), and finally said board, as soon as it shall have sent or delivered to the collector such roll and warrant, is required to transmit to the county treasurer a statement containing the names of the several collectors, the amounts they are respectively to collect, and the purposes for which they are to be collected. (§ 38, p. 997.)

It is quite obvious from the chronological order in which the proceedings are directed to be taken, that the duty of computing and entering the amount of the tax upon the assessment-roll is imperative. Legal validity could not be given to a warrant requiring the collector, to collect the sums entered in the last column of the assessment-roll, when none are entered therein, nor could the board of supervisors inform the county treasurer of the aggregate amount of the tax to be collected, when it had not been ascertained.

Each of these directions requires a completed assessment-roll, and the united action of the board of supervisors while it is still in actual session, and capable of corporate and co-operative action. (*Bradley* v. *Ward*, 58 N Y. 401.)

The proper assessment of a tax requires not only the establishment of a ratio upon which the tax is to be based, but also the computation and entry in the roll of the amount of tax levied. Without this no tax has been levied and the board of supervisors has failed in the performance of the duty which the statute specifically enjoins upon it. Whatever clerical duty may properly be devolved upon third persons, it is clear that it can be such only as is to be performed in the presence of the board and under its supervision, and that the duty of passing upon the question of a corrected assessment-roll and certifying to its accuracy and complete-

ness as a perfected roll, is a judicial duty which cannot be delegated. (*Bellinger* v. *Gray*, 51 N. Y 610 )

We are, therefore, of the opinion that the rolls for the several years 1868, 1869 and 1870 in the town of Stratford and the warrants attached thereto were fatally defective, and imposed no liability upon the persons taxed.

It is also equally clear that a return of the non-payment of taxes, so levied, conferred no authority upon the comptroller to sell the land thus taxed. (*Thompson* v. *Burhans*, 61 N. Y. 52 ; *Whitney* v. *Thomas*, 23 N. Y. 281.)

It is, however, claimed that the taxes for the respective years 1866 and 1867, having been lawfully imposed and there having been default made in the payment thereof, the comptroller acquired jurisdiction to sell and convey such lands, although the sale was also made, for an aggregate sum including the illegal taxes for other years. In other words, it is claimed that the comptroller, having in his hands unpaid reported taxes for a number of different years, some of which were legal and some invalid, can enforce the payment of the illegal taxes by taking proceedings to collect the legal ones, and that the owner of real estate can only regain possession of his property by paying a sum of money which the State has no legal right to demand.

We do not think such a proposition can be supported.

It appears that the sale of the land in question was made by the comptroller in 1877, and was predicated upon the aggregate of the taxes thereon, for all of the years from 1866 to 1870 inclusive, and that the same was bid in on such sale by the State at a gross sum, sufficient to cover the entire taxes.

No such sale can become perfect, so as to vest title in the purchaser until after an opportunity has been given to the owner to redeem his land and reclaim the title. ( *Westbrook* v. *Willey*, 47 N. Y. 457 ; *Doughty* v. *Hope*, 3 Den. 594.) By the statute in force at the time of this sale, such redemption might be made at any time within two years after the last day of sale, by paying to the State treasurer for the use of the purchaser the sum mentioned in the certificate of sale, with

ten per cent interest thereon; and it was further required that the comptroller should give notice stating specifically the parcels of land unredeemed, and the amount required to redeem the same, and publish the same for six weeks in certain designated newspapers in the county, and finish such publication at least eighteen weeks before the final period of redemption.

This notice is said to be for the benefit of the owners, and no title passes until it has been properly published and the time of redemption has expired. ( *Westbrook* v. *Willey, supra.*)

Under our scheme of taxation, the tax for each year is separately levied and returned to the comptroller, and he is under no legal obligation in making a sale of lands, to join the taxes of different years, or to sell for the aggregate sum of all the taxes due for separate years upon such land.

The necessary effect of such a joinder of taxes is, therefore, to make the payment of an illegal tax, the condition of the owner's right to retain his property, and subject him, contrary to the meaning and spirit of the statute, to the payment of an unjust and illegal exaction, as the price of his legal right to redeem his property.

Upon the sale the purchaser is required to bid sufficient to cover all of the taxes claimed against the land, and upon redemption the owner is required to pay the same amount with interest. The sale being for an entire sum, it cannot be legal beyond the amount for which the comptroller was legally authorized to sell the land.

There can be no division of the sum payable, and no separation which can validate a part and reject the rest. It is either wholly bad or altogether good.

The invalidity of such a sale has been the subject of frequent discussion among text writers and in the cases, and the authorities seem to be quite uniform on the subject. (Burroughs on Taxation, § 113; Cooley on Taxation, 345.)

It has been repeatedly held that a sale of land for the taxes of several years, one of which is void, is an excess of jurisdiction

in the officer making the sale and renders his proceedings void. (*Moulton* v. *Blondell*, 24 Me. 283 ; *Wallingford* v. *Fishe*, id. 386 ; *Hardenburgh* v *Kidd*, 10 Cal. 402 ; *Elewell* v. *Shaw*, 1 Greenlf. 335 ; *Hall* v *Kelling*, 16 Mich. 135 ; *Santa Clara Co.* v. *Southern Pac. R. R. Co.*, 18 Cal. 394 ; *Rinde* v. *Howell*, 113 Ill. 250.)

Many other cases might be cited from these and other States, but sufficient have been referred to, to show that the doctrine stated has the support, not only of the federal courts, but also those of every State in the Union, except where statutory regulations interfere.

We therefore conclude that the comptroller's deed, under which the plaintiff sought to make claim to the lumber in question, was wholly void and the plaintiff's claim must fail.

The ground suggested by the appellant that the plaintiff might still recover under its title as having the original and ultimate property in all of the lands in the State, is quite untenable.

The proof of the comptroller's deed having, as against the state, shown that it had once parted with its original right of property, and assumed to sell the land as that of a citizen for taxes, precludes it from claiming that its original proprietorship still remains.

We are, therefore, of the opinion that the judgment should be affirmed.

All concur.

Judgment affirmed.