## HENNESSEY *v.* VOLKENING.

*N. Y. Superior Court, Trial Term ; January,* 1893.

1. *Constitutional law ; private property.*] The rule that a statute
   imposing a tax or assessment without giving the property-
   owners affected thereby an opportunity to be heard, has the
   effect of depriving them of their property without due process
   of law, and is unconstitutional,—has no application to the stat-
   utes,* providing that unpaid water rents in the city of New
   York may be enforced by the sale of the property liable there-
   for, as for unpaid taxes ; the payment of such rent is only en-
   forced against property upon which the water is used, and is
   not a tax or assessment, but merely a charge for water sup-
   plied, of which the owner of the property has notice, and has an
   opportunity to correct in case of overcharge.  Distinguishing
   Stuart *v.* Palmer, 74 *N. Y.* 183;  Remsen *v.* Wheeler, 105 *Id.*
   573 ; and Matter of Trustees of Union College, 129 *Id.* 308.

2. *Statutes ; interpretation.*] Although section 350 of the Con-
   solidation Act of N. Y. city (L. 1882, c. 410), provides that water
   rents shall be collected from "all such buildings which shall
   be situated upon lots adjoining any street or avenue in which
   distributing water pipes are laid and from which they can be
   supplied with water,"—it will be construed, in order to uphold

---

* L. 1841, c. 383 ; L. 1851, c. 298 ; L. 1853, c. 579; L. 1854, c. 335,
Consolidation Act of N. Y. City (L. 1882, c. 410, as amended by
L. 1887, c. 559) §§ 350, *et seq.*

its constitutionality, as charging such rents only to buildings actually supplied with water.

3. *The same.*] The long and uninterrupted practice under the statute in conformity with such construction is also to be considered in support of it.

4. *Taxes.*] Water rents in N. Y. city are chargeable only upon property actually supplied with water; and are not a tax or assessment, but merely a charge for water furnished.

5. *The same; sale of lands for non-payment.*] Where the notice of redemption from a tax sale stated that the property was sold for taxes on December 28, 1886, and that redemption must be made "on or before the expiration of two years," which was specifically stated to be the 28th of December, 1888,—*Held,* that such notice complied with the statute* requiring a notice of redemption to state a day certain. Distinguishing Willis *v.* Gehlert, 34 *Hun,* 566; and Donohue *v.* O'Conor, 45 *Super. Ct.* 278.

6. *The same.*] The comptroller's certificate of non-redemption of property sold for taxes,—issued by the comptroller of N. Y. city to the purchaser at a tax sale, upon an affidavit filed by such purchaser that the required notice to redeem has been served †— is not a judicial determination, and does not conclude the owner of the property sold from showing that the service of the notice to redeem, was defective.

7. *The same.*] *It seems* that such certificate is presumptive evidence only to the extent that redemption has not been made and the comptroller has been satisfied by affidavit of the service of the notice to redeem ; and that the service of the notice to redeem must be established by common law evidence.

Motion for new trial made by defendants on the minutes after verdict rendered in favor of plaintiff.

Action of ejectment brought by John Hennessey against Bertha Volkening and others.

The facts are fully stated in the opinion.

*James A. Deering* and *George G. Munger*, for the motion.

*John Townshend* opposed.

---

* Consolidation Act of N. Y. City (L. 1882, c. 410), § 941.
† See *Id.* §§ 943–946.

McADAM, J.—The action is for ejectment and *mesne* profits, founded on a tax lease made by the tax officials of the City and County of New York on a sale had December 28, 1886, for the taxes of 1882, amounting to $405, and for $10.35 water rent of the previous year.

The land not having been redeemed within the statutory period according to the requirement of the notice published, and written notice served on the occupants, a lease in due form was executed to the purchaser, who subsequently, and before suit brought, transferred it to the plaintiff.   The sale has been challenged for several reasons; among others, that the unpaid water rent of 1881 formed no basis for it, and that the entire sale was invalidated as a consequence of including this item in it (People *v.* Hagadorn, 104 *N. Y.* 516).   The rule is fundamental that, under our laws for the taxation of property, the person to be affected must have some notice of the proceeding to be had against his property, that in some form he may be heard before any portion of his estate is seized for the support of the Government, and that all laws which permit of the taxation of property without these safeguards are unconstitutional and void.   In this regard " due process of law " always proceeds upon inquiry and renders judgment only after trial.   It applies to all cases where property is sought to be taken or interfered with (3 *Am. & Eng. Enc. of Law*, 714).

These principles are elementary, and the question is how far they affect the case at bar.   They underlie the whole system of taxation and were enforced as to an assessment for a local improvement in Kings County (Stuart *v.* Palmer, 74 *N. Y.* 183) ; and in two cases of water rates, one in Brooklyn, and the other in Long Island City (Remsen *v.* Wheeler, 105 *N. Y.* 573 ; in the Matter of Union College, 129 *Id.* 308), all of which were declared unconstitutional, for violation of the doctrine stated.   In the case of Remsen *v.* Wheeler (*supra*), at page 578, the court said : " We are of opinion that the assessments for water

rents were invalid, and that the sales under the same were wholly unauthorized and illegal. In the city of Brooklyn there was a system of water-works and a board of water commissioners, and section 24, chapter 396, of the Laws of 1859, provides as follows:

"The said water-board shall, in every year, by resolution, fix the price which shall be assessed . . . upon every *vacant lot* situated upon any street, lane, alley or court through or into which distributing pipes shall have been laid, until the bonds issued for the construction of the said works, with the interest thereon, shall have been paid. And thereafter they shall be adjusted so as to, with other provisions of this act for income from said works, meet the expense of repairs, maintenance and *extention of said* works. . . . Such sums so assessed, together with percentages for defaults, . . . shall be a lien upon the said premises respectively, and the same may be collected and enforced in the same manner as taxes are collected and enforced against land in said city." The lots of the plaintiffs were vacant, and hence were assessed and assessable for water rates under this section. As no use of the water could be made upon vacant lots, it must have been intended that whatever assessment was made upon them under this section was to be apportioned according to the value of the lots, or the benefits to them, or the cost of bringing the water to the mrespectively. . . . Therefore, in regard to the imposition of these assessments, as in reference to the imposition of other assessments and taxes, the lot owners were entitled at some stage of the proceeding to a notice and an opportunity to be heard; and, unless the law gives them the right to notice and an opportunity of being heard, before the board which was authorized to impose the assessment, it was unconstitutional and void for the reason given in Stuart v. Palmer, *supra*."

The reason for requiring notice to the taxpayer before levying a tax or assessment on his property, is that such a charge once regularly confirmed is final and conclusive

against him.   That reason does not apply to  water rents in the City of New  York, against improved  property on which water is used, because, as will be seen presently, the property  owner supplied  with water  knows beforehand what it is to cost, and if any  error or overcharge  is made in his bill it may be corrected.   The charge upon  persons and their  property for  supplying  them  with water, and commonly  known  as " water rent," is not in  its *inception* either  a tax or assessment.   For the  early  statutes  in regard to the department, see Valentine's laws  relating to the city, and Davies and Hoffman's laws  relating thereto.

Prior to the year  1842, the sources of water supply to the City of New York were wells, the old Tea  Pump and the Manhattan Water Works, in Reade street.

By a popular vote in 1835 (under *Laws* 1834, chapter 256), it was  determined to  supply, at the expense of  the municipality, the City of  New York with  water from the Croton  River, and on  July 4, 1842, the plans  adopted to that end had so far  matured that  water from the  Croton River was  used in the city.   The work as not completed until 1845.   The money to execute this work was  raised by the  issue of  bonds  and was  a city debt (*Laws* 1841, chapter 306).   Chief among the objects of introducing the water into the city were to  easier extinguish  fires (a want emphasized by the fire of 1835) and the supplying water to the citizens for domestic use.

In 1849 a law was passed (*Laws* 1849, ch. 383) creating the  Croton Aqueduct  Department, which amongst  other things, provided  (sec. 18) that the common council should by  ordinance establish a scale of  annual rents for  supply of water, to be called  " regular rents," and apportioned to the different  classes of  buildings in said city  in reference to their dimensions, values, exposure to fires, ordinary use for dwellings, stores, shops, private  stables and other pur-poses, number of  families, etc., etc.   Such regular rents to be collected " from  the owners or occupants of all such buildings " as should be situated upon lots adjoining any

Hennessey *v.* Volkening.

street or avenue in which distributing pipes should be laid and from which they could be supplied with water, and said regular rents should become a charge and lien upon such houses and lots.

Section 26. Rents in arrear were to be collected by sale of the property.

Section 28. This law took effect for collecting rents on the 1st of May in the year after the common council determined to carry its provisions into effect, and for the transmutation of unpaid rents into a direct tax on the buildings.

This has been substantially the law ever since, and it seems worthy of remark, that its provisions have been submitted to for a period of nearly half a century, and now for the first time the court is asked to declare the law unconstitutional.

Courts will hesitate to do this, and will do it only upon reasons the most palpable and unanswerable (see 3 *Am. & Eng. Enc. of Law,* 674 ; *Laws* 1851, ch. 298 ; *Laws* 1853, ch. 579 ; *Laws* 1854, ch. 335 ; the *Consolidation Act,* § 350, as amended 1887, ch. 559 ; by this amendment the regulation of water rents is under the supervision of the commissioner of public works).

That the legislature denominates the making the rent or charge " transmutation into a direct tax," shows that the legislature understood the rent was not in its inception a tax, though sometimes carelessly call by that name.

As regards water rents, the city occupies the position of a merchant with commodities for sale. It collects a quantity of water, provides means for its distribution, fixes a rate at which it will supply with water, and proclaims that all requiring water can have it at that rate. The city does for water what the gas companies do for gas. The legislature has the right to declare that an indebtedness for water rent shall be a lien, and that the property may be sold to satisfy that lien, equally as it declares the wages of a mechanic a lien, and that the property may be sold to

Hennessey *v.* Volkening.

pay that lien.  This is a law of which every one  must be
presumed  to  have  notice.    No  one  can  use  water
and  say he did not know he was to pay for it.   It cannot
be  answered  that  in  the  case  of  a  mechanic's  lien  the
property  cannot  be  sold  until  after  a  judgment.    The
judgment  is only to settle the amount, but the legislature
might have ordered a sale without such a judgment, as  it
authorizes the foreclosure of a mortgage lien by advertise-
ment without suit.

If it be said  what remedy has the  property  holder to-
rectify any excessive or  erroneous  charge.    The commis-
sioner of  public works,  who makes the charges for water
rent, has authority to correct any  excessive  or  erroneous.
charge, and  it is expressly provided that after the return
to the clerk of arrears of the delinquent water renter,  the
president of the   water bureau may give the property·
holder a certificate stating the   excess  or  error,   which
the  clerk  of  arrears  is  bound   to  respect  and  allow
(*Laws* 1853,  ch.   579,  § 9, as amended ;  *Laws*  1854,  ch.
335,  §  1;  *Consolidation  Act*,  §  921).    If  it  is  urged,
further, that the property holder  may  omit  to  point  out
any excess or error, what then ?   If the  charge  for  water
is erroneous, two remedies are open to him ; he may bring
a suit to determine the  lien  or  its  amount,  or  he  may
allow his property to be  sold,  and  then  defend  himself
from the lease given on sale, on the ground that the prop-
erty was sold for more than was due.   In this case there
was no pretense  that the amount charged was excessive,
and the lease is presumptive evidence that all the pro-
ceedings respecting the lien were regular, and the  amount
correct.

It is essential to a right understanding of the character·
of a " water rent " and extra charges in New York, and to
a perception of its difference from the water rents adjudi-
cated upon in the cases of  Stewart *v.* Palmer, Wheeler *v.*
Remsen and  Trustees of Union College, to mark how in
New York the rents and extra charges  are  imposed,  and.

how they, in fact, amount to a contract between the authorities and the consumers. 1. The commissioner of public works is to establish a scale of rents for the supply of water. 2. Rents to be collected in manner provided by law. 3. Rents to be apportioned to different buildings in reference to their dimensions, values, exposure to fire and uses, etc., or consumption of water as near as may be practicable. 4. All extra charges to be included in water rents. 5. Water rents to become a lien upon the buildings upon which imposed. 6. Such rents to be collected from the owners or occupants of all such buildings which shall be situated upon lots adjoining any street or avenue in which distributing pipes are laid and from which they can be supplied with water. 7. No charge to be made in any building in which a water meter shall be placed (*Consol. Act*, § 352).

The water-meter system was intended to measure the water consumed, that the owner or occupant might pay for the quantity actually used on the premises—no more. The present suit relates to water rents of 1880 and 1881, but the law is substantially the same. The commissioner of public works established a scale of rents; a printed copy was used at the trial. The scale is for buildings from sixteen to fifty feet wide, and of one, two, three, four or five stories high. Tenements wider than fifty feet are the subject of special contract. Then there are extra charges for extra families, for bakeries, barber shops, bathing tubs, building purposes, cows, fish stands, stables, hotels, laundries, liquor saloons, etc., etc. And then, on page 6 of the scale, all matters not mentioned are reserved for special contract. Next observe the jealous care with which the authorities in charge guard the Croton water from use by any one, unless by contract with them. No one without a permit can use the water. Plumbers are required to be licensed, and to licensed plumbers only are permits given to tap the Croton water-pipes (see Applications for License, and License Nos. 1 and 2). Before a

building can be erected in New York plans must be filed
with the building bureau.   So soon as this is done, the
water register sends notice to the owner or builder to get
a permit (see Forms of Notices 3 and 4).   Those wanting
water send an application for tapping pipes (see Form 5).
If application is granted, a permit issues with rules indorsed
(see Forms 6 and 7).   The rules printed on permits are
notice to water takers (*Laws* 1849, ch. 383, § 27).   Plumb-
ers are required to make a monthly return of work done
affecting Croton Water (Form 8).   Persons failing to pay
for water supplied are notified that unless paid water will
be cut off (Form 9).

It will be observed that every step is taken upon the
supposition that the authorities are not levying a tax, but
supplying water upon the application of owners or occu-
pants of houses or owners of horses or cows, or bakeries or
barber shops, who are apprised by the scale of the rate of
charge, which is an implied contract, and where not so ap-
prised the matter is the subject of special contract.

The city might, without any law, say, " We will not
supply water except at certain rates," and the legislature
may say that the price of water so furnished shall be a
lien enforceable by sale, as in the case of foreclosure by
advertisement.

It is apparent from this that, although the language of
the law (*Consol. Act*, § 350) is that rent shall be collected
from " all such buildings which shall be situated upon lots
adjoining any street or avenue in which distributing water
pipes are laid, and from which they can be supplied with
water," that rents are charged only to buildings actually
supplied with water.   No water, no rent.

The law admits of that construction; and, if it shall be
deemed material as affecting the constitutionality of the
statute, it will certainly be construed in a sense which will
uphold the law (*vide ut infra*).

It will be observed from the preceding that our water
system has been one of steady and satisfactory growth

Hennessey *v.* Volkening.

until it has become one of the most important and best regulated of the kind in America. It is no longer an experiment—but a fixed and permanent institution. The parts of the acts condemned in the three cases before cited find no counterpart in the law relating to New York City. They formed the worst kind of a star chamber system. No house—no water—no benefit, but an arbitrary tax every year on vacant lots. No notice—but prompt sales for arrearages followed by clandestine leases. The whole thing was wrong from its inception to the end. In New York City the system is matured, been long tried and is well understood. It needs no stronger recommendation than the acquiescence and approval of nearly half a century. The conclusion reached, after a careful examination of the different acts, systems and authorities, is that where water is actually used on premises in the City of New York, the water rent, if not paid, may be carried into the tax of the following year, and its payment enforced by lien and sale, like ordinary taxes or assessments; but where the water is not so used, no contract obligation by the owner to pay is to be implied, and the charge becomes nothing more nor less than an involuntary tax imposed without legal notice to the land owner or " due process of law," and the proceedings to enforce payment by means of a statutory lien and sale of the property, are, in consequence, unconstitutional and void under existing acts, and that a sale for taxes or assessments is vitiated which includes in it this objectionable feature (People *v.* Hagadorn, 104 *N. Y.* 516).

In the present instance, it will be inferred (under the presumptions expressly created by the statute, and under those applicable to public officers) that water was used on the premises in question, for they were improved and occupied, and that there was an implied contract by the owner to pay the rent therefor, and that the lien created in favor of such charge and the sale authorized therefor were the proper exercise of legislative power. No attempt

has been made to levy any impost on " vacant lots," in respect to which there could be no implied contractual obligation to pay. Such a charge would in its very nature be that of a direct tax or assessment imposed under color of the taxing power, and the person whose property was to be affected thereby would be entitled to some form of notice and an opportunity of being heard before the system could receive judicial sanction as " due process of law." Notice, or at least the means of knowledge, is an essential element of every proceeding which affects the rights or property of persons (Overing *v*. Foote, 65 *N. Y.* 263 ; *In re* Union R. R. Co., 112 *Id.* at p. 75). Any such tax would be open to the fundamental objection urged by the defendant. But that feature is wanting in the present instance, and the objection is, therefore, without merit.

The system prevailing in the City of New York, of which quite a history has been given, is so unlike the one condemned by Judge FINCH, that a distinction in reference to improved property in which water is used may readily be drawn in favor of the City of New York, and its time-honored system upheld as free from all taint of unconstitutionality.

The courts possess the power, and it is their duty when a law is unconstitutional, to declare it to be so. They will, however, be careful not so to declare it, except the case be very clear (People *ex rel.* Force *v*. Albertson, 55 *N. Y.* at p. 54; Kerrigan *v*. Force, 68 *Id.* 381). Every laudable means are employed to uphold laws and avoid the consequences of declaring them unconstitutional. Thus, there is a rule that if a statute is susceptible of a construction which will render it valid within a constitutional limitation, the courts must so construe it (Sage *v*. City of Brooklyn, 89 *N. Y.* 189, and see Roosevelt *v*. Godard, 52 *Barb.* 533). Where a statute is capable of two constructions, both equally reasonable, one of which will render it valid, the other void, courts will adopt the former (People *v*. Terry, 108 *N. Y.* 1).

Again, where part only of the statute or section is

unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void that it cannot be presumed that the legislature would have enacted the one without the other (Duryee *v.* Mayor, 96 *N. Y.* 477 ; People *v.* Kenney, *Id.* 294). If, when the unconstitutional part is stricken out, the remainder is complete in itself, and the legislative intent ·can be executed, it must be retained, though they are both in the same section (People *v.* Kenney, *supra ;* Lawton *v.* Steele, 119 *N. Y.* 226).

A long and uninterrupted practice under a statute is regarded as good evidence of its construction (Power *v.* Village of Athens, 26 *Hun*, 282 ; *In re* Washington Street, 115 *N. Y.* 442 ; S. C., 26 *State Rep.* 504), upon the elementary principle of contemporaneous and practical construction (*Cooley's Const. L.* 3d· ed. 67).

We now proceed to the next inquiry : The statute pro-vides that " all such leases shall be presumptive evidence that the sale and all proceedings prior thereto, from and in-cluding the assessment or taxes or Croton water rent and all notices required by law to be given previous to the expira-tion of two years allowed to redeem were regular and ac-cording to the provisions of the statute " (*Consol. Act,* § 941).

The power of the legislature to change the common-law rule of evidence is undoubted (People *v.* Turner, 117 *N. Y.* 227). This law, therefore, shifts the burden of proof from the tax lessee to the person assailing the lease, and such assailing party is bound to establish by satisfac-tory evidence the illegality or defect which vitiates and renders the lease void (Coleman *v.* Shattuck, 62 *N. Y.* 358 ; Lott *v.* De Graw, 30 *Hun*, 417).

The defendant in assuming this burden objects to the published notice of redemption, in that it does not fix a ·" day certain " on which the owner was obliged to redeem, and cites Willis *v.* Gehlert (34 *Hun*, 566) and Donohue *v.* ·O'Conor (45 *Super. Ct.* 278) to sustain his objection.

In those cases it was held that published notice requiring

redemption " on, by or before a stated time " is not suffic-
ient, because the statute requires that " a·day certain "
shall be specified in the notice, and that notice in the form
suggested is in no sense a compliance· with this require-
ment. These decisions are technical in the extreme, and
hardly· in keeping with the rule that substantial compli-
ance with the statute providing for the imposition of taxes
in all matters of substance designed for the protection of
the taxpayer is sufficient (Westfall *v.* Preston, 49 *N.Y.* 349 ;
Parish *v.* Golden, 35 *Id.* 462 ; Buffalo & State Line R. R. Co.
*v.* Supervisors of Erie, 48 *Id.* 93), nor with the maxim that
that is certain which may be made certain—*certum est quod
certum reddi potest* (*Co. Litt.* 45 ; 1 *Bouvier*, p. 214, subd.
3). They are in accordance with views announced by some
of the courts—that where a statute strips an individual of
his property, or in any way affects the same, its requirements
must be strictly complied with to enable parties purchasing
to acquire a title, and that these cannot in the slightest
degree be dispensed with (Adriance *v.* McCafferty, 2 *Robt.*
155 ; People *v.* Hagartown, 102 *N. Y.* 516). On the other
hand the late Chief-Justice TREAT, in Atkins *v.* Hinman
(2 *Gilm.* 452, 456), said : " Technical objections are gener-
ally insisted on, and have, in some instances, been counten-
anced by the courts. They proceed from a one-sided
view of the subject. The allegation that the land is sac-
rificed for a trifle, and a purchaser is acquiring acres for
cents, is alone regarded, while the obligations of the tax-
payer and the rights of the government are not considered.
If the proceedings under these laws are to be subjected to
mere technical tests, taxes will remain unpaid, individuals
will cease to bid at sales, and thus the principal objects of
the laws may be frustated. But if, on the other hand, by
the application of reasonable rules, some assurance is
given that the titles will be sustained, the taxes will be
generally paid, the competition at the biddings will be in-
creased, and, instead of whole tracts of land being sold to
pay the taxes due upon them, small portions only will suf-

Hennessey *v.* Volkening.

fice." These views seem considerate as well as weighty and merit reflection

The decisions before cited in regard to the insufficiency of the published notice to redeem would be conclusive here, but for the fact that the notice published in this instance is entirely different from those held to be insufficient. The property sold is in the Ninteenth ward, and the published notice stated that property situated in the " Nineteenth and Twenty-second " Wards were sold for these taxes December 28, 1886, and that redemption must be made " on or before the expiration of two years," which, as to property in the " Nineteenth and Twenty-second " Wards, was specifically stated to be the " 28th of December, 1888."

The very object of the change of phraseology was to obviate the objections sustained as to the former notices, which were condemned in the cases mentioned.

Thus, the published notice complied not only substantially, but literally, with the law, in specifying a " day certain " on which redemption was required. The fact that the purchaser did not pay in the amount of the bid on the day of the sale is of no consequence ; the certificate dates from the day of sale, draws interest from that day, and the time to redeem starts from that time (People *v.* Cady, 105 *N. Y.* 305).

The remaining question is whether the comptroller's certificate is conclusive, presumptive or any evidence of the service of the notice to redeem. Until a lease is delivered, all the acts required to be done are performed by the city, officials. After the delivery of the lease to the purchaser one act is required to be performed by him. He is to serve upon the occupant and owner a notice that he holds the lease and requires them to redeem within six months (*Consol. Act,* § 943). The notice is to be served personally or by leaving at the dwelling-house of the occupant or owner with a person of suitable age and discretion belonging to his or her family (*Consol. Act,* § 944). The purchaser,

to complete his title, shall file with the clerk of arrears an affidavit of service with a copy of the notice attached (*Consol. Act*, § 945). If comptroller shall be satisfied by such affidavit that the notice has been duly served, and if there has been no redemption, he (the comptroller) shall, under his hand and seal, certify to the fact, and the conveyance (lease) shall thereupon become absolute and the owner be barred of all right (*Consol. Act*, § 946). It is contended by the plaintiff that the certificate of the comptroller is a judicial act in the nature of a judgment, and whether his determination be correct or not, it is conclusive (People *v*. Chapin, 104 *N. Y.* 100; Same *v*. Same, 103 *Id.* 635; Howland *v*. Eldredge, 43 *Id.* 461); that in the Western States the certificate is given by the county court, and is not open to attack collaterally (*Burroughs on Tax.* § 116; Wallace *v*. Brown, 22 *Ark.* 118; Hunt *v*. McFadgen, 20 *Id.* 277); that it is similar to proceedings in *rem* and conclusive as to all persons (Parker *v*. Overman, 18 *How.* (*U. S.*) 104; Payne *v*. Darby, 18 *Ark.* 444; Wallace *v*. Brown and Hunt *v*. McFadgen, *supra*). In other words the plaintiff contends that the certificate can be attacked only on a direct bill filed for the purpose of setting it aside, and until vacated by such direct proceeding it cannot be otherwise questioned. The statute does not declare that the certificate shall be conclusive evidence of the facts therein set forth, or even presumptive evidence thereof, and the evident intention was to leave the question of service by the purchaser of the notice to redeem provable by common-law evidence only. The presumptions attaching to the other proceedings by force of the statute, and the general presumption that public officers do their duty (Lawson *v*. Pinckney, 40 *Super. Ct.* 187; 68 *N. Y.* 528; 45 *Id.* 369; 54 *Barb.* 9) attaches here, but only to the extent that redemption had not been made, and that the comptroller was satisfied by the affidavit presented that proper service of the written notice to redeem had been made. While it is true that the statute allowing

Hennessey *v.* Volkening.

time for redemption exists by favor of the legislature and not as of right, it must while in force be regarded, according to its purpose and intent, as an additional safeguard to the owner, who was not to be deprived of his property until all the terms, conditions and requirements of the statute were substantially complied with. The certificate of the comptroller, even if regarded as a judicial act, is not of that final character which concludes the defendant, for it is a fundamental rule that in all judicial or *quasi* judicial proceedings, whereby the citizen may be deprived of his property, he shall have notice and an opportunity of a hearing before the proceedings can become effectual. The court in People *v.* Soper (7 *N. Y.* p. 431) said: "There is nothing which our law denounces more explicitly than an adjudication of the rights of a party without offering him an opportunity of being heard in his defense." Indeed, notwithstanding the certificate, the landowner has the right to prove that redemption had, as matter of fact, been made, or that no affidavit whatever had been presented to the comptroller, or that the one upon which he acted was false in material respects.

In Smith *v.* Buhler (121 *N. Y.* 213), arising upon the very same statutory provisions that the case at bar is founded on (*Laws of* 1871, ch. 381), FINCH, J., delivering the opinion of court, said: "Due service upon the owner of a notice to redeem is made essential to the right of the purchaser to have his lease from the comptroller made absolute. Until then the lessee, as against the owner, obtains no title, and has only an imperfect or inchoate right which may ripen into one. That notice is for the protection of the owner, and to give him a final opportunity to save his title from destruction. It is to him the most important step in the proceeding upon which he has a right to rely, and, since its result is to finally divest his title, must be taken in strict accordance with the statute."

In the People *v.* Walsh (87 *N. Y.* 481) it was held in a summary proceeding to recover possession of land in the

City of Brooklyn, claimed under a tax sale, that service
of the notice required by the statute must be proved by
competent common-law evidence that a copy of the notice
with an affidavit of the service thereof is not sufficient.
EARL, J., said : " There is nothing in the statutes of 1854
or 1862 which are the same in substance as the sections in
the Consolidation Act or in any other statute, making
the affidavit of the service of notice evidence of such ser-
vice in any court or judicial proceeding.    It was required
to be made and filed for purpose of making record
evidence sufficiently reliable for all purposes.    The tax
collector, under section 29 above recited, could rely upon
it when the owner or other person came to redeem premises
from the sale, section 27 required that the notice should
be served before the owner could be divested of his title,
and a person claiming under a tax sale must show the
service of the notice by competent evidence.    Upon the
trial before the justice, the appellant put in evidence a
copy of the notice and the affidavit attached thereto, but
gave no other evidence or proof of the service.    That was
not sufficient.    The service of the notice should have been
proved by common-law evidence.    So far as I have been
able to discover, such has been the rule uniformly applied
in analogous cases (citing several authorities).    *Ex parte*
affidavits are evidence in judicial proceedings only as some
law has declared them to be evidence, and they are not
evidence of any facts stated in them, unless some law
makes them such.  ·  As shown above, it is plain that the
affidavit required by section 28 can answer a purpose with-
out holding that it is a substitute for common law evidence
of the service of notice, and hence the claim is not well
founded that the statute requiring the affidavit is useless,
unless it is held to furnish evidence of the service in
any and all judicial proceedings.    This construction can
ordinarily lead to no great inconvenience, because the
person making the service of notice can be called as a
witness, and the proof of service, if desirable, could be

perpetuated under the laws relating to perpetuating evidence, and if the affidavit ought to be either conclusive or *prima facie* evidence of the service of notice, the legislature can be appealed to so to declare."

The Revised Statutes in regard to the sale of lands for taxes by the State comptroller are substantially the same as those we have been considering, for service of notice to redeem.

In Caulkins *v.* Chamberlain (22 *Weekly Dig.* 93), the court said : " It was not intended that a certificate in compliance with section 73 should be received as *prima facie* evidence of the facts required to be done by the grantee in a litigation over title to land. Service to redeem should have been proved by common-law evidence."

The two last cases demonstrate that though an affidavit of service of notice to redeem may be proper for some purposes, such as satisfying the comptroller sufficiently for him to give his certificate, yet, when the matter comes to litigation in the courts over the title, it has no weight as evidence, for in such case the party sought to be affected by proof of service of so important a document must in every system of jurisprudence have an opportunity of cross-examining the witness at whose hands such results are claimed to have been affected.

The service of the notice to redeem being one of the essential steps to divesting, the owner's title is in its very nature jurisdictional (Joslyn *v.* Rockwell, 128 *N.Y.* 334). Where, therefore, a sale was made and lease given for the nonpayment of taxes for the year 1876, and the notice served stated a sale for a tax of 1874, held, that this was not a compliance with the provision of the statute, and that the lessee acquired no title ; and all this, notwithstanding the certificate of the comptroller that he was satisfied the proper notice had been served (Smith *v.* Buhler, 121 *N. Y.* 213). Where a taxpayer called upon the proper officer for a statement of all taxes due from him, received a statement and paid all the taxes included therein, and

afterwards the land was sold for nonpayment of taxes in
arrear at the time the statement was furnished, but which
were omitted from it by the neglect of the officer or his
clerk, the title of the taxpayer is not divested by the sale
(People *v.* Registrar, etc., 114 *N. Y.* 19). The affidavit
furnished by the lessee was not sufficient evidence of the
fact of service (People *ex rel.* Martin *v.* Brown . 55 *N. Y.*
180 ; Cagwin *v.* Hancock, 84 *Id.* 532).

Indeed, in People *v.* Chapin (104 *N. Y.* at p. 371),
wherein the court held that the comptroller to an extent
acted judicially in certain tax matters, disclaimed all idea
of holding such a deter.nination conclusive. The court
said : " The owner of the land is not a party to the pro-
ceeding, nor is he permitted in this way to test the valid-
ity of the sale or tax. In such a controversy the pur-
chaser would have an interest and a right to its protection
in the courts by the usual course of legal proceedings.
The statute contains no intimation of a legislative pur-
pose to deprive him of that right. It gives no process to
bring him in, confers no power to compel witnesses. In
short, it creates no court ; provides for a single transaction
to which the comptroller and the purchaser are the only
parties."

These cases all demonstrate that, while an affidavit may
suffice to satisfy the comptroller and authorize his certifi-
cate, yet, at the trial common-law evidence of service of
the written notice to redeem must be furnished that the
propriety of it might be tested by legal rules, and any
fraud in respect to the attempted service detected and
defeated. It was certainly not intended to conclude the
owner by the *ex parte* affidavit filed with the comptroller,
whether true or false, or by the certificate of that official
founded thereon, in the absence of the owner, and without
affording him any hearing whatever thereon. No one can
be condemned, nor can his property be taken or its title
divested, without his day in court—a hearing of some
kind—and an opportunity to defend against the charge

which is calculated to produce these results. The defend-ant offered to prove irregularities in the service of the written notice to redeem, fatal to the plaintiff's case, and the evidence was excluded under exception, upon the ground that the certificate of the comptroller was conclu-sive.

For this error the verdict in favor of the plaintiff must be set aside, and a new trial ordered, with costs to abide the event. The various objections have been fully gone over in the hope that the new trial may, to some extent, be simplified thereby.