JOHN P. GEHRHARDT and Others, Plaintiffs, *v.* JOHN J. SCHWARTZ, Defendant.

*Assessment for taxation — it should not include in one assessment several parcels of land belonging to different owners — the land assessed should be described by stating its amount or by reference to a map or by other description adequate to point it out.*

Chapter 114 of the Laws of 1883, as amended by chapter 163 of the Laws of 1885, provided that "the board of assessors of the city of Brooklyn shall have power and jurisdiction, and they are hereby directed and required in all cases where any tax, assessment or water rate levied or imposed, or attempted to be levied or imposed, on any land in said city prior to the first day of July, eighteen hundred and eighty-two, remains unpaid and in arrears, except as is hereinafter otherwise provided, to examine into and fix, adjust and determine as to each parcel of land how much of said arrearages ought, in the way of tax, assessment and water rate, in fairness and justice now presently to be laid, assessed and charged against and actually collected from said land, by reason of any and all the matters and things covered or attempted or intended to be covered, or done or attempted or intended to be done, in the laying and assessing the said taxes, assessments or water rates so in arrears as aforesaid, and the said board, in dealing with said arrearages as matters of fact according to their judgment of what shall be fair and just as hereinbefore directed, shall treat the same without regard to any supposed want of jurisdiction, irregularity or defect in any of the proceedings had for the levying, imposing or confirming any of said taxes, assessments or water rates so in arrears."

Section 2 of the said act provided that the board should keep a record of its proceedings, " in which shall be entered their determination as to the amount to be charged and assessed upon and against each parcel of land as aforesaid, designating the same by the block and lot numbers on the assessment maps in their office," and, further, that when the board had thus acted and properly certified the result, its determination should constitute a valid and binding tax, assessment and lien upon the lands so designated in lieu and instead of all outstanding claims.

Section 3 of the act provided that it should not be necessary in the list of the property to be sold, in the certificate of the board of assessors, in the advertisement of the sale or in any notice to state the name of the owner of the premises, nor "to describe the premises affected otherwise than by the said block and lot numbers on the assessment map of the ward."

From 1853 down to July, 1882, four lots in the city of Brooklyn, although plotted upon the assessment maps of the city as separate lots and known by different numbers, were, except in the year 1862, assessed together as one parcel. Three of said lots and a half interest in the fourth lot were owned by one individual,

while the remaining half interest in the fourth lot was owned by a number of other individuals.

In January, 1886, the board of assessors of the city of Brooklyn, assuming to act under the provisions of the statute above set forth, certified that the just amount of the arrearages of taxes, assessments and water rates due upon the four lots was a particular sum, and charged such sum against the four lots as one parcel.

*Held,* that the assessment for arrearages thus fixed by the board of assessors was invalid as to the group of individuals owning the half interest in one of the four lots included in the assessment, for the reason that, in order to relieve their property from the burden of the assessment, they would be obliged to pay the entire assessment levied upon all four lots;

That it was the purpose of the statute to require the board of assessors to adjust the arrearages to each parcel of land, not as it might have been previously erroneously assessed, but as fixed by the assessment maps of the city of Brooklyn;

That it is a fundamental rule of taxation that the property to be assessed, and which may ultimately be taken or sold for the payment of the taxes, must be described, either by stating the amount of land or by a reference to a map or other description, so that the same may be surveyed or pointed out.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*James R. Bowen* [*Hugh A. McTernan* with him on the brief], for the plaintiffs.

*David B. Ogden,* for the defendant.

WOODWARD, J.:

The plaintiffs in this action claim to be the owners in fee, and entitled to immediate possession of a certain lot or parcel of land on the north side of Marion street in the borough of Brooklyn, known as lot No. 32 in block 5 on a map entitled " Map of 264 Building Lots in the Ninth Ward of the City of Brooklyn." The defendant claims a like ownership and right to possession by virtue of a certain tax sale of the premises to the city of Brooklyn, and by subsequent conveyances, and the question presented to this court is whether such tax sale operated to divest the plaintiffs of their conceded interest in this property.

From the 25th day of November, 1863, down to May 2, 1870, the premises in question, together with lots Nos. 34, 36 and 38 on said map, were owned by and were in possession of one Balthasar Gehrhardt, since deceased. For many years prior to 1887 lots 36

and 38 were occupied by a building used as a brewery, lot 34 being vacant and lot 32 being occupied by a building used as a stable. In the year last above mentioned the buildings were razed, and since that time the lands have not been occupied by any buildings whatever. On the 2d day of May, 1870, by foreclosure sale, the title to lots 34, 36 and 38 and an undivided one-half interest in lot 32 became vested in one Hiram M. Parker, and the latter subsequently deeded the same to one Norman F. Howe. By a deed dated October 5, 1887, and recorded on the eighth day of the same month, Howe conveyed the undivided one-half interest in lot 32 to one John McMahon, together with the other lots above mentioned, and all of the interest which Howe or his grantee, McMahon, may have retained in lot 32, subsequent to the tax sale here under consideration, has since become vested in the plaintiff Amanda L. Gilbert.

It is evident from this statement of facts that Balthasar Gehrhardt, or his heirs, still owned an undivided one-half interest in lot 32, which was separate and distinct from the lots with which it had been previously associated, and this interest, in so far as it has not been divested by the tax sale in question, is now owned by John P. Gehrhardt, Mary Bretnitz, Caroline F. Schmidt, Catharine Worth and Henry A. Gehrhardt, who constitute the heirs of Balthasar Gehrhardt, deceased, and who are the plaintiffs in this action. From 1853 down to the present lots 32, 34, 36 and 38 have been plotted upon the assessment maps of the city of Brooklyn as four separate lots, although known by different numbers, yet all of the general taxes, excepting those for the year 1862, had been levied and assessed as single sums upon the said four lots tied together as one parcel down to July, 1882. In 1862 the taxes and water rates were assessed upon each lot separately, and the case contains a schedule showing the average amounts assessed upon the several lots annually, but in the view which we take of this case these facts are not material. These taxes, assessments and water rates so levied and assessed against these several parcels of real estate aggregated, with interest thereon, $3,630.73 in July, 1882, and these taxes not being available for the reason that they were, with other taxes, contested on the ground of irregularities in assessments, etc., the Legislature in the following year undertook to provide a method of validating the taxes and placing them in a position where they could be collected.

Chapter 114 of the Laws of 1883 (as amd. by Laws of 1885, chap. 163) contained a preamble in which it was recited that " whereas, arrears of unpaid taxes, assessments and water rates in the city of Brooklyn have accumulated to an amount exceeding ten millions of dollars, and in some instances said arrears exceed in amount the assessed value of the lands affected thereby ; and, whereas, the validity of some of such unpaid taxes, assessments and water rates has been or may be called in question by reason of some irregularity, omission or defect in the procedure instituting, laying or imposing the same," and it was provided (§ 1) that " the board of assessors of the city of Brooklyn shall have power and jurisdiction, and they are hereby directed and required in all cases where any tax, assessment or water rate levied or imposed, or attempted to be levied or imposed, on any land in said city prior to the first day of July, eighteen hundred and eighty-two, remains unpaid and in arrears, except as is hereinafter otherwise provided, to examine into and fix, adjust and determine as to each parcel of land how much of said arrearages ought, in the way of tax, assessment and water rate, in fairness and justice now presently to be laid, assessed and charged against and actually collected from said land, by reason of any and all the matters and things covered or attempted or intended to be covered, or done or attempted or intended to be done, in the laying and assessing the said taxes, assessments or water rates so in arrears as aforesaid, and the said board, in dealing with said arrearages as matters of fact according to their judgment of what shall be fair and just as hereinbefore directed, shall treat the same without regard to any supposed want of jurisdiction, irregularity or defect in any of the proceedings had for the levying, imposing or confirming any of said taxes, assessments or water rates so in arrears." Section 2 of the same act provided that the board should keep a record of its proceedings, " in which shall be entered their determination as to the amount to be charged and assessed upon and against each parcel of land as aforesaid, designating the same by the block and lot numbers on the assessment maps in their office." And it was further provided in said section that when the board had thus acted and properly certified the result its determination should constitute a valid and binding tax, assessment and lien upon the lands so designated in lieu and instead of all outstanding claims, etc. This act, as was said of a

similar statute in *Trowbridge* v. *Horan* (78 N. Y. 439, 443), "seems to have been designed as a healing balm for all the ills under which Long Island City had been suffering, from irregular and illegal assessments for a series of years," and it is to be given a reasonable construction to accomplish its purposes, but it is to have no doubtful interpretation for the purpose of working a wrong against the owners of property.

Assuming to act under the provisions of the statute above set forth, the board of assessors of the city of Brooklyn, in January, 1886, fixed, determined and certified to the registrar of arrears and to the comptroller of the city of Brooklyn that the amount of the arrearages of taxes, assessments and water rates which ought under the provisions of such act to be laid, assessed, charged against and actually collected from the four lots above mentioned in lieu and instead of the aforesaid arrearages upon the said lots or either of them was $2,025, said sum being fixed and certified as one sum against the four lots taken together. The effect of this action was to include in one assessment property belonging to two separate and distinct individuals, or groups of individuals, and to compel the plaintiffs in this action to pay all of the taxes upon the four lots as a condition precedent to the saving of their interest in lot 32 from sale, and this action is not justified by any law with which we are familiar. The fair construction of chapter 114 of the Laws of 1883, as amended, requires, we believe, that the board of assessors should adjust the arrearages to each parcel of land, not as it may have been previously erroneously assessed, but as fixed by the assessment map of the city of Brooklyn. The statute makes mention of these assessment maps and provides that it shall not be necessary in the list of the property to be sold, in the certificate of the board of assessors, in the advertisement of the sale or in any notice to state the name of the owner of the premises, nor "to describe the premises affected otherwise than by the said block and lot numbers on the assessment map of the ward." (Laws of 1883, chap. 114, § 3.) It is, we believe, a fundamental rule of taxation that the property to be assessed, and which may ultimately be taken or sold for the payment of the taxes, must be described, either by stating the amount of land or by a reference to a map or other description, so that the same may be surveyed or pointed out. The owner has a right to have the

land designated, and the one who purchases at a tax sale has a right to know the premises which he is purchasing, and there can be no valid assessment of real estate which does not, in some manner prescribed by the statute, afford a description of the premises to be assessed, for this would result in taking the property of the individual without due process of law. There is no authority in law for assessing the property of one individual to another, and if the premises to be assessed are not clearly pointed out it must often happen that the owner of one lot or parcel will be assessed for lands which do not belong to him, as was the case in *Erschler* v. *Lennox* (11 App. Div. 511, 515), and as has happened in the case at bar by reason of the neglect of the board of assessors to conform to the provision of the statute which required them to adjust the assessment to each parcel as pointed out by the assessment maps of the city of Brooklyn. As between the plaintiffs and the owners of the remaining undivided one-half interest in lot 32 the assessment might properly have been made by a designation of the lot, but to charge generally against four lots was not a compliance with the statute, and we so held in *Dever* v. *Hagerty* (43 App. Div. 354). It is true that this case was reversed (169 N. Y. 481), but there is nothing in the opinion which discredits the utterances of this court upon the point here under consideration. But if there was the present case presents a different state of facts, for here lot 32 was owned by different persons from those owning the remaining lots, in part at least, and a long line of authorities have held that, where there were improper elements going to make up the amount of an assessment against any particular piece of property, it operates to vitiate a sale for the non-payment of taxes. (See *Matter of Willis*, 30 Hun, 13 ; *Shattuck* v. *Bascom*, 105 N. Y. 39, 45, 46, and authorities there cited.) In *People* v. *Hagadorn* (104 N. Y. 516, 524) where a sale was made because of default in the payment of taxes in each of several years, some of which were void and others valid, the court say : " The necessary effect of such a joinder of taxes is, therefore, to make the payment of an illegal tax the condition of the owner's right to retain his property and subject him, contrary to the meaning and spirit of the statute, to the payment of an unjust and illegal exaction as the price of his legal right to redeem his property. Upon the sale the purchaser is

required to bid sufficient to cover all of the taxes claimed against the land, and upon redemption the owner is required to pay the same amount with interest. The sale being for an entire sum it cannot be legal beyond the amount for which the comptroller was legally authorized to sell the land."

Here, if the assessment be deemed to have been against the plaintiffs, it included three lots in which they had no possible interest, and they could not legally be deprived of their right to pay the legitimate taxes against their own property or to redeem the same by the error of the board of assessors in merging the taxes upon these separate parcels. On the other hand, if the assessment was made against the owners of the other three lots they could not properly be charged with the payment of the taxes of the plaintiffs, and we are persuaded that as against these plaintiffs there was never a valid imposition of the burden and that the sale as to them was wholly illegal and void. The rules laid down in *May* v. *Traphagen* (139 N. Y. 478, 481) and in *Erschler* v. *Lennox* (11 App. Div. 511, 514, and authorities there cited) convince us that the judgment in this case should be for the plaintiffs according to the terms of the stipulation upon which this case was submitted.

HIRSCHBERG, P. J., BARTLETT and JENKS, JJ., concurred; HOOKER, J., not voting.

Judgment for plaintiffs, without costs, on submitted controversy.