### HENNESSEY v. VOLKENING et al.

(Superior Court of New York City, Jury Term. February 9, 1893.)

1. CONSTITUTIONAL LAW—WATER RENTS—NOTICE.
Laws. 1882, c. 410, (Consolidation Act,) § 350, which provides that rents shall be collected from all buildings situated upon lots adjoining any street or avenue in which distributing water pipes are laid, and from which they may be supplied with water, charges rent only to buildings supplied with water; and therefore the statutory provision authorizing the unpaid water rent to be carried into the tax of the following year, and its payment enforced by lien and sale, like ordinary taxes and assessments, is constitutional, though no notice is required to be given the land owner, since he knows beforehand what the water rates are, and, if any overcharge is made, he may have it corrected. Remsen v. Wheeler, 12 N. E. Rep. 564, 105 N. Y. 573, distinguished.

2. TAXATION—REDEMPTION—NOTICE OF EXPIRATION.
A published notice stating that certain property was sold for taxes. December 28, 1886, and that redemption must be made "on or before the expiration of two years," the last day being specifically stated to be December 28, 1888, is a sufficient compliance with the statutory requirement that the notice specify a "day certain" on which to make redemption.

3. SAME—SERVICE OF NOTICE—PROOF.
Consolidation Act, § 941, which provides that all tax leases made by tax. officials shall be presumptive evidence that the tax sale and all prior proceedings, "and all notices required by law to be given previous to the expiration of two years allowed to redeem," were regular and valid, applies. only to acts required to be done by the tax officials; and therefore such a lease is no evidence that the notice of the expiration of the time of redemption was served by the purchaser, as required by section 943;. and in a litigation involving the validity of such a lease an affidavit by the purchaser of service of the notice to redeem filed with the city comptroller is not admissible as evidence of such service, but such service; must be proved at the trial by common-law evidence, so that its propriety may be tested by legal rules, and any fraud in respect to the attempted service detected and defeated.

Ejectment by John Hennessey against Bertha Volkening and others. After verdict in plaintiff's favor, defendants moved for a new trial on the minutes. Motion granted.

Jas. A. Deering and Geo. G. Munger, for motion.
John Townshend, opposed.

McADAM, J.   The action is for ejectment and mesne profits, founded on a tax lease made by the tax officials of the city and county of New York on a sale had December 28, 1886, for the taxes of 1882, amounting to $405, and for $10.35 water rent of the previous year.   The land not having been redeemed within the statutory period according to the requirement of the notice published, and written notice served on the occupants, a lease in due form was executed to the purchaser, who subsequently, and before suit brought, transferred it to the plaintiff.   The sale has been challenged for several reasons; among others, that the unpaid water rent of 1881 formed no basis for it, and that the entire sale was invalidated as a consequence of including this item in it.   People v. Hagadorn, 104 N. Y. 516, 10 N. E. Rep. 891.   The rule is fundamental that, under our laws for the taxation of property, the person to be affected must have some notice of the proceeding to be had against his property; that in some form he may be heard before any portion of his estate is seized for the support of the government; and that all laws which permit of the taxation of property without these safeguards are unconstitutional and void.   In this regard "due process of law" always proceeds upon inquiry, and renders judgment only after trial.   It applies to all cases where property is sought to be taken or interfered with.   3 Amer. & Eng. Enc. Law, 714.   These principles are elementary, and the question is how far they affect the case at bar. They underlie the whole system of taxation, and were enforced as to an assessment for a local improvement in Kings county, (Stuart v. Palmer, 74 N. Y. 183,) and in two cases of water rates,—one in Brooklyn, and the other in Long Island City, (Remsen v. Wheeler, 105 N. Y. 573, 12 N. E. Rep. 564;  In re Trustees of Union College, 129 N. Y. 308, 29 N. E. Rep. 460,)—all of which were declared unconstitutional, for violation of the doctrine stated.   In the case of Remsen v. Wheeler, supra, at page 578, 105 N. Y., and page 565, 12 N. E. Rep., the court said:

"We are of opinion that the assessments for water rents were invalid, and that the sales under the same were wholly unauthorized and illegal.   In the city of Brooklyn there was a system of water works and a board of water commissioners; and section 24, c. 396, of the Laws of 1859 provides as follows: 'The said water board shall, in every year, by resolution, fix the price which shall be assessed * * * upon every vacant lot situated upon any street, lane, alley, or court through or into which distributing pipes shall have been laid, until the bonds issued for the construction of the said works, with the interest thereon, shall have been paid; and thereafter they shall be adjusted so as to, with other provisions of this act for income from said works, meet the expense of repairs, maintenance, and extension of said works. * * * Such sums, so assessed, together with percentages for defaults, * * * shall be a lien upon the said premises respectively, and the same may be collected and enforced in the same manner as taxes are collected and enforced against land in said city.'   The lots of the plaintiffs were vacant, and hence were assessed and assessable for water rates under this section.   As no use of the water could be made upon vacant lots, it must have been intended that whatever assessment was made upon them under this section was to be apportioned according to the value of the lots, or the benefits to them, or the cost of bringing the water to them respectively.

\* \* \* Therefore, in regard to the imposition of these assessments, as in reference to the imposition of other assessments and taxes, the lot owners were entitled at some stage of the proceeding to a notice and an opportunity to be heard; and, unless the law gives them the right to notice, and an opportunity of being heard before the board which was authorized to impose the assessment, it was unconstitutional and void, for the reason given in Stuart v. Palmer, supra."

The reason for requiring notice to the taxpayer before levying a tax or assessment on his property is that such a charge once regularly confirmed is final and conclusive against him.    That reason does not apply to water rents in the city of New York, against improved property on which water is used, because, as will be seen presently, the property owner supplied with water knows beforehand what it is to cost, and if any error or overcharge is made in his bill it may be corrected.    The charge upon persons and their property for supplying them with water, and commonly known as "water rent," is not in its inception either a tax or assessment.    For the early statutes in regard to the department, see Valentine's Laws, relating to the city, and Davies & Hoffman's Laws, relating thereto. Prior to the year 1842, the sources of water supply to the city of New York were wells,—the old Tea Pump and the Manhattan Waterworks, in Reade street.    By a popular vote in 1835, (under Laws 1834, c. 256,) it was determined to supply, at the expense of the municipality, the city of New York with water from the Croton river, and on July 4, 1842, the plans adopted to that end had so far matured that water from the Croton river was used in the city.    The work was not completed until 1845.    The money to execute this work was raised by the issue of bonds, and was a city debt.    Laws 1841, c. 306.    Chief among the objects of introducing the water into the city were to easier extinguish fires, (a want emphasized by the fire of 1835,) and the supplying water to the citizens for domestic use. In 1849 a law was passed (Laws 1849, c. 383) creating the Croton aqueduct department, which, among other things, provided (section 18) that the common council should by ordinance establish a scale of annual rents for supply of water, to be called "regular rents," and apportioned to the different classes of buildings in said city in reference to their dimensions, values, exposure to fires, ordinary use for dwellings, stores, shops, private stables, and other purposes, number of families, etc.; such regular rents to be collected "from the owners or occupants of all such buildings" as should be situated upon lots adjoining any street or avenue in which distributing pipes should be laid, and from which they could be supplied with water, and said regular rents should become a charge and lien upon such houses and lots.    Section 26. Rents in arrear were to be collected by sale of the property.    Section 28. This law took effect for collecting rents on the 1st of May in the year after the common council determined to carry its provisions into effect, and for the transmutation of unpaid rents into a direct tax on the buildings. This has been substantially the law ever since, and it seems worthy of remark that its provisions have been submitted to for a period of nearly half a century, and now for the first time the court is asked to declare the law unconstitutional.    Courts will hesitate to do this,

and will do it only upon reasons the most palpable and unanswerable. See 3 Amer. & Eng. Enc. Law, 674; Laws 1851, c. 298; Laws 1853, c. 579; Laws 1854, c. 335; Consolidation Act,[1] § 350, as amended by Acts 1887, c. 559. By this amendment the regulation of water rents is under the supervision of the commissioner of public works. That the legislature denominates the making the rent or charge a "transmutation into a direct tax," shows that the legislature understood the rent was not in its inception a "tax," though sometimes carelessly called by that name. As regards water rents, the city occupies the position of a merchant with commodities for sale. It collects a quantity of water, provides means for its distribution, fixes a rate at which it will supply with water, and proclaims that all requiring water can have it at that rate. The city does for water what the gas companies do for gas. The legislature has the right to declare that an indebtedness for water rent shall be a lien, and that the property may be sold to satisfy that lien, equally as it declares the wages of a mechanic a lien, and that the property may be sold to pay that lien. This is a law of which every one must be presumed to have notice. No one can use water and say he did not know he was to pay for it. It cannot be answered that in the case of a mechanic's lien the property cannot be sold until after a judgment. The judgment is only to settle the amount; but the legislature might have ordered a sale without such a judgment, as it authorizes the foreclosure of a mortgage lien by advertisement without suit. It may be said, what remedy has the property holder to rectify any excessive or erroneous charge? The commissioner of public works, who makes the charges for water rent, has authority to correct any excessive or erroneous charge, and it is expressly provided that, after the return to the clerk of arrears of the delinquent water renter, the president of the water bureau may give the property holder a certificate stating the excess or error, which the clerk of arrears is bound to respect and allow. Laws 1853, c. 579, § 9, as amended; Laws 1854, c. 335, § 1; Consolidation Act, § 921.

If it is urged, further, that the property holder may omit to point out any excess or error, what then? If the charge for water is erroneous, two remedies are open to him,—he may bring a suit to determine the lien or its amount; or he may allow his property to be sold, and then defend himself from the lease given on sale, on the ground that the property was sold for more than was due. In this case there was no pretense that the amount charged was excessive, and the lease is presumptive evidence that all the proceedings respecting the lien were regular, and the amount correct. It is essential to a right understanding of the character of a "water rent" and extra charges in New York, and to a perception of its difference from the water rents adjudicated upon in the cases of Stuart v. Palmer, Remsen v. Wheeler, and In re Trustees of Union College, to mark how in New York the rents and extra charges are imposed, and how they, in fact, amount to a contract between the authorities and the consumers: (1) The commissioner of public works is to

---

[1] Laws 1882, c. 410.

establish a scale of rents for the supply of water; (2) rents to be collected in manner provided by law; (3) rents to be apportioned to different buildings in reference to their dimensions, values, exposure to fire and uses, etc., or consumption of water, as near as may be practicable; (4) all extra charges to be included in water rents; (5) water rents to become a lien upon the buildings upon which imposed; (6) such rents to be collected from the owners or occupants of all such buildings which shall be situated upon lots adjoining any street or avenue in which distributing pipes are laid, and from which they can be supplied with water; (7) no charge to be made in any building in which a water meter shall be placed. Consolidation Act, § 352.

The water-meter system was intended to measure the water consumed, that the owner or occupant might pay for the quantity actually used on the premises,—no more. The present suit relates to water rents of 1880 and 1881, but the law is substantially the same. The commissioner of public works established a scale of rents. A printed copy was used at the trial. The scale is for buildings from 16 to 50 feet wide, and of 1, 2, 3, 4, or 5 stories high. Tenements wider than 50 feet are the subject of special contract. Then there are extra charges for extra families, for bakeries, barber shops, bathing tubs, building purposes, cows, fish stands, stables, hotels, laundries, liquor saloons, etc.; and then, on page 6 of the scale, all matters not mentioned are reserved for special contract. Next observe the jealous care with which the authorities in charge guard the Croton water from use by any one, unless by contract with them. No one without a permit can use the water. Plumbers are required to be licensed, and to licensed plumbers only are permits given to tap the Croton water pipes, (see applications for license and license Nos. 1 and 2.) Before a building can be erected in New York, plans must be filed with the building bureau. So soon as this is done, the water register sends notice to the owner or builder to get a permit, (see forms of notices 3 and 4.) Those wanting water send an application for tapping pipes, (see form 5.) If application is granted, a permit issues, with rules indorsed, (see forms 6 and 7.) The rules printed on permits are notice to water takers. Laws 1849, c. 383, § 27. Plumbers are required to make a monthly return of work done affecting Croton water, (form 8.) Persons failing to pay for water supplied are notified that, unless paid, water will be cut off, (form 9.) It will be observed that every step is taken upon the supposition that the authorities are not levying a tax, but supplying water upon the application of owners or occupants of houses or owners of horses or cows, or bakeries or barber shops, who are apprised by the scale of the rate of charge, which is an implied contract, and, where so not apprised, the matter is the subject of special contract. The city might, without any law, say, "We will not supply water except at certain rates," and the legislature may say that the price of water so furnished shall be a lien enforceable by sale, as in the case of foreclosure by advertisement. It is apparent from this that, although the language of the law (Consolidation Act, § 350) is that rent shall be collected from "all such buildings which shall be situated

upon lots adjoining any street or avenue in which distributing water pipes are laid, and from which they can be supplied with water," rents are charged only to buildings actually supplied with water. No water, no rent.   The law admits of that construction; and, if it shall be deemed material as affecting the constitutionality of the statute, it will certainly be construed in a sense which will uphold the law, (vide ut infra.)

It will be observed from the preceding that our water system has been one of steady and satisfactory growth, until it has become one of the most important and best regulated of the kind in America. It is no longer an experiment, but a fixed and permanent institution.   The parts of the acts condemned in the three cases before cited find no counterpart in the law relating to New York city. They formed the worst kind of a star chamber system.   No house, no water, no benefit; but an arbitrary tax every year on vacant lots.   No notice, but prompt sales for arrearages followed by clandestine leases.   The whole thing was wrong from its inception to the end.   In New York city the system is matured, been long tried, and is well understood.   It needs no stronger recommendation than the acquiescence and approval of nearly half a century.   The conclusion reached, after a careful examination of the different acts, systems, and authorities, is that, where water is actually used on premises in the city of New York, the water rent, if not paid, may be carried into the tax of the following year, and its payment enforced by lien and sale, like ordinary taxes or assessments; but, where the water is not so used, no contract obligation by the owner to pay is to be implied, and the charge becomes nothing more nor less than an involuntary tax imposed without legal notice to the landowner or "due process of law," and the proceedings to enforce payment by means of a statutory lien and sale of the property are, in consequence, unconstitutional and void under existing acts, and that a sale for taxes or assessments is vitiated which includes in it this objectionable feature.   People v. Hagadorn, 104 N. Y. 516, 10 N. E. Rep. 891.   In the present instance, it will be inferred, under the presumptions expressly created by the statute, and under those applicable to public officers, that water was used on the premises in question, for they were improved and occupied, and that there was an implied contract by the owner to pay the rent therefor, and that the lien created in favor of such charge and the sale authorized therefor were the proper exercise of legislative power.   No attempt has been made to levy any impost on "vacant lots," in respect to which there could be no implied contractual obligation to pay. Such a charge would in its very nature be that of a direct tax or assessment imposed under color of the taxing power, and the person whose property was to be affected thereby would be entitled to some form of notice and an opportunity of being heard before the system could receive judicial sanction as "due process of law."   Notice, or at least the means of knowledge, is an essential element of every proceeding which affects the rights or property of persons.   Overing v. Foote, 65 N. Y. 277; In re Union El. R. Co., 112 N. Y. at page 75, 19 N. E. Rep. 664.   Any such tax would be open to the fundamental

objection urged by the defendants; but that feature is wanting in the present instance, and the objection is therefore without merit. The system prevailing in the city of New York, of which quite a history has been given, is so unlike the one condemned by Judge Finch that a distinction in reference to improved property in which water is used may readily be drawn in favor of the city of New York, and its time-honored system upheld as free from all taint of unconstitutionality. The courts possess the power, and it is their duty, when a law is unconstitutional, to declare it to be so. They will, however, be careful not so to declare it, except the case be very clear. People v. Albertson, 55 N. Y., at page 54; Kerrigan v. Force, 68 N. Y. 381. Every laudable means are employed to uphold laws, and avoid the consequences of declaring them unconstitutional. Thus, there is a rule that, if a statute is susceptible of a construction which will render it valid within a constitutional limitation, the courts must so construe it. Sage v. City of Brooklyn, 89 N. Y. 189; and see Roosevelt v. Godard, 52 Barb. 533. Where a statute is capable of two constructions, both equally reasonable, one of which will render it valid, the other void, courts will adopt the former. People v. Terry, 108 N. Y. 1, 14 N. E. Rep. 815. Again, where part only of the statute or section is unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void that it cannot be presumed that the legislature would have enacted the one without the other. Duryee v. Mayor, 96 N. Y. 477; People v. Kenney, Id. 294. If, when the unconstitutional part is stricken out, the remainder is complete in itself, and the legislative intent can be executed, it must be retained, though they are both in the same section. People v. Kenney, supra; Lawton v. Steele, 119 N. Y. 226, 23 N. E. Rep. 878. A long and uninterrupted practice under a statute is regarded as good evidence of its construction (Power v. Village, 26 Hun, 282; In re Washington St. A. & P. R. Co., 115 N. Y. 442, 22 N. E. Rep. 356) upon the elementary principle of contemporaneous and practical construction, (Cooley, Const. Lim. [3d Ed.] 67.)

We now proced to the next inquiry. The statute provides that "all such leases shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment or taxes or Croton water rent and all notices required by law to be given previous to the expiration of two years allowed to redeem, were regular, and according to the provisions of the statute." Consolidation Act, § 941. The power of the legislature to change the common-law rule of evidence is undoubted. People v. Turner, 117 N. Y. 227, 22 N. E. Rep. 1022. This law, therefore, shifts the burden of proof from the tax lessee to the person assailing the lease, and such assailing party is bound to establish by satisfactory evidence the illegality or defect which vitiates and renders the lease void. Colman v. Shattuck, 62 N. Y. 358; Lott v. De Graw, 30 Hun, 417. The defendants, in assuming this burden, object to the published notice of redemption, in that it does not fix a "day certain" on which the owner was obliged to redeem, and cite Willis v. Gehlert, 34 Hun, 566, and Donahue v. O'Conor, 45 N. Y. Super. Ct. 278, to

sustain their objection.   In those cases it was held that published notice requiring redemption "on, by, or before a stated time" is not sufficient, because the statute requires that "a day certain" shall be specified in the notice, and that notice in the form suggested is in no sense a compliance with this requirement.   These decisions are technical in the extreme, and hardly in keeping with the rule that substantial compliance with the statute providing for the imposition of taxes in all matters of substance designed for the protection of the taxpayer is sufficient, (Westfall v. Preston, 49 N. Y. 349; Parish v. Golden, 35 N. Y. 462; Buffalo & S. L. R. Co. v. Board of Sup'rs of Erie Co., 48 N. Y. 93;) nor with the maxim that that is certain which may be made certain,—"certum est quod certum reddi potest," (Co. Litt. 45; 1 Bouvier, p. 214, subd. 3.)   They are in accordance with views announced by some of the courts,—that where a statute strips an individual of his property, or in any way affects the same, its requirements must be strictly complied with to enable parties purchasing to acquire a title, and that these cannot in the slightest degree be dispensed with.   Adriance v. McCafferty, 2 Rob. (N. Y.) 155; People v. Hagadorn, 104 N. Y. 516, 10 N. E. Rep. 891. On the other hand, the late Chief Justice Treat, in Atkins v. Hinman, 2 Gilman, 452, 456, said:

"Technical objections are generally insisted on, and have, in some instances, been countenanced by the courts.   They proceed from a one-sided view of the subject.   The allegation that the land is sacrificed for a trifle, and a purchaser is acquiring acres for cents, is alone regarded, while the obligations of the taxpayer and the rights of the government are not considered.   If the proceedings under these laws are to be subjected to mere technical tests. taxes will remain unpaid, individuals will cease to bid at sales, and thus the principal objects of the laws may be frustrated.   But if, on the other hand, by the application of reasonable rules, some assurance is given that the titles will be sustained, the taxes will be generally paid, the competition at the biddings will be increased, and, instead of whole tracts of land being sold to pay the taxes due upon them, small portions only will suffice."

These views seem considerate, as well as weighty, and merit reflection.   The decisions before cited in regard to the insufficiency of the published notice to redeem would be conclusive here but for the fact that the notice published in this instance is entirely different from those held to be insufficient.   The property sold is in the Nineteenth ward, and the published notice stated that property situated in the "Nineteenth and Twenty-second" wards were sold for these taxes December 28, 1886, and that redemption must be made "on or before the expiration of two years," which, as to property in the "Nineteenth and Twenty-second" wards, was specifically stated to be the "28th of December, 1888."   The very object of the change of phraseology was to obviate the objections sustained as to the former notices, which were condemned in the cases mentioned. Thus, the published notice complied not only substantially, but literally, with the law, in specifying a "day certain" on which redemption was required.   The fact that the purchaser did not pay in the amount of the bid on the day of the sale is of no consequence.   The certificate dates from the day of sale, draws interest from that day,

and the time to redeem starts from that time.     People v. Cady, 105 N. Y. 305, 11 N. E. Rep. 810.

The remaining question is whether the comptroller's certificate is conclusive, presumptive, or any evidence of the service of the notice to redeem.    Until a lease is delivered, all the acts required to be done are performed by the city officials.    After the delivery of the lease to the purchaser, one act is required to be performed by him.    He is to serve upon the occupant and owner a notice that he holds the lease, and requires them to redeem within six months.    Consolidation Act, § 943.    The notice is to be served personally, or by leaving at the dwelling house of the occupant or owner, with a person of suitable age and discretion belonging to his or her family.    Id. § 944.    The purchaser, to complete his title, shall file with the clerk of arrears an affidavit of service, with a copy of the notice attached. Id. § 945.    If comptroller shall be satisfied by such affidavit that the notice has been duly served, and if there has been no redemption, he (the comptroller) shall, under his hand and seal, certify to the fact, and the conveyance (lease) shall thereupon become absolute, and the owner be barred of all right.    Id. § 946.

It is contended by the plaintiff that the certificate of the comptroller is a judicial act, in the nature of a judgment, and, whether his determination be correct or not, it is conclusive, (People v. Chapin, 104 N. Y. 100, 10 N. E. Rep. 141; Id., 103 N. Y. 635, 8 N. E. Rep. 368; Howland v. Eldredge, 43 N. Y. 461;) that in the western states the certificate is given by the county court, and is not open to attack collaterally, (Burroughs, Tax'n, § 116; Wallace v. Brown, 22 Ark. 118; Hunt v. McFadgen, 20 Ark. 277;) that it is similar to proceedings in rem, and conclusive as to all persons, (Parker v. Overman, 18 How. 140; Payne v. Danley, 18 Ark. 444; Wallace v. Brown and Hunt v. McFadgen, supra.)    In other words, the plaintiff contends that the certificate can be attacked only on a direct bill filed for the purpose of setting it aside, and until vacated by such direct proceeding it cannot be otherwise questioned.    The statute does not declare that the certificate shall be conclusive evidence of the facts therein set forth, or even presumptive evidence thereof, and the evident intention was to leave the question of service by the purchaser of the notice to redeem provable by common-law evidence only.    The presumptions attaching to the other proceedings by force of the statute, and the general presumption that public officers do their duty, (Lawson v. Pinckney, 40 N. Y. Super. Ct. 187; Mandeville v. Reynolds, 68 N. Y. 528; Wood v. Morehouse, 45 N. Y. 369; Finlay v. Cook, 54 Barb. 9,) attach here, but only to the extent that redemption had not been made, and that the comptroller was satisfied by the affidavit presented that proper service of the written notice to redeem had been made.    While it is true that the statute allowing time for redemption exists by favor of the legislature, and not as of right, it must, while in force, be regarded, according to its purpose and intent, as an additional safeguard to the owner, who was not to be deprived of his property until all the terms, conditions, and requirements of the statute were substantially complied with.    The certificate of the comptroller, even if regarded as a judicial act, is

not of that final character which concludes the defendant; for it is a fundamental rule that in all judicial or quasi judicial proceedings, whereby the citizen may be deprived of his property, he shall have notice and an opportunity of a hearing before the proceedings can become effectual. The court, in People v. Soper, 7 N. Y., at page 431, said:

"There is nothing which our law denounces more explicitly than an adjudication of the rights of a party without offering him an opportunity of being heard in his defense."

Indeed, notwithstanding the certificate, the landowner has the right to prove that redemption had, as matter of fact, been made, or that no affidavit whatever had been presented to the comptroller, or that the one upon which he acted was false in material respects. In Smith v. Buhler, 121 N. Y. 213, 24 N. E. Rep. 11, arising upon the very same statutory provisions that the case at bar is founded on, (chapter 381, Laws 1871,) Finch J., delivering the opinion of the court, said:

"Due service upon the owner of a notice to redeem is made essential to the right of the purchaser to have his lease from the comptroller made absolute. Until then the lessee, as against the owner, obtains no title, and has only an imperfect or inchoate right which may ripen into one. That notice is for the protection of the owner, and to give him a final opportunity to save his title from destruction. It is to him the most important step in the proceeding upon which he has a right to rely, and, since its result is to finally divest his title, must be taken in strict accordance with the statute."

In People v. Walsh, 87 N. Y. 481, it was held in a summary proceeding to recover possession of land in the city of Brooklyn, claimed under a tax sale, that service of the notice required by the statute must be proved by competent common-law evidence, and that a copy of the notice with an affidavit of the service thereof is not sufficient. Earl, J., said:

"There is nothing in the statutes of 1854 or 1862, which are the same in substance as the sections in the consolidation act, or in any other statute, making the affidavit of the service of notice evidence of such service. in any court or judicial proceeding. It was required to be made and filed for purpose of making record evidence sufficiently reliable for all purposes. The tax collector, under section 29, above recited, could rely upon it when the owner or other person came to redeem premises from the sale. Section 27 required that the notice should be served before the owner could be divested of his title, and a person claiming under a tax sale must show the service of the notice by competent evidence. Upon the trial before the justice, the appellant put in evidence a copy of the notice and the affidavit attached thereto, but gave no other evidence or proof of the service. That was not sufficient. The service of the notice should have been proved by common-law evidence. So far as I have been able to discover, such has been the rule uniformly applied in analogous cases, [citing several authorities.] Ex parte affidavits are evidence in judicial proceedings only as some law has declared them to be evidence, and they are not evidence of any facts stated in them, unless some law makes them such. As shown above, it is plain that the affidavit required by section 28 can answer a purpose, without holding that it is a substitute for common-law evidence of the service of notice, and hence the claim is not well founded that the statute requiring the affidavit is useless, unless it is held to furnish evidence of the service in any and all judicial proceedings. This construction can ordinarily lead to no great inconvenience, because the person making the service of notice can be called as a witness, and the proof of service, if desirable,

could be perpetuated under the laws relating to perpetuating evidence; and, if the affidavit ought to be either conclusive or prima facie evidence of the service of notice, the legislature can be appealed to so to declare."

The Revised Statutes in regard to the sale of lands for taxes by the state comptroller are substantially the same as those we have been considering, for service of notice to redeem.    In Caulkins v. Chamberlain, 22 Wkly. Dig. 93, the court said:

"It was not intended that a certificate in compliance with section 73 should be received as prima facie evidence of the facts required to be done by the grantee in a litigation over title to land.    Service to redeem should have been proved by common-law evidence."

The two last cases demonstrate that though an affidavit of service of notice to redeem may be proper for some purposes, such as satisfying the comptroller sufficiently for him to give his certificate, yet, when the matter comes to litigation in the courts over the title, it has no weight as evidence; for in such case the party sought to be affected by proof of service of so important a document must in every system of jurisprudence have an opportunity of cross-examining the witness at whose hands such results are claimed to have been affected.    The service of the notice to redeem being one of the essential steps to divesting, the owner's title is in its very nature jurisdictional.    Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. Rep. 604. Where, therefore, a sale was made, and lease given for the nonpayment of taxes for the year 1876, and the notice served stated a sale for a tax of 1874, held, that this was not a compliance with the provision of the statute, and that the lessee acquired no title; and all this, notwithstanding the certificate of the comptroller that he was satisfied the proper notice had been served.    Smith v. Buhler, 121 N. Y. 213, 24 N. E. Rep. 11.    Where a taxpayer called upon the proper officer for a statement of all taxes due from him, received a statement, and paid all the taxes included therein, and afterwards the land was sold for nonpayment of taxes in arrear at the time the statement was furnished, but which were omitted from it by the neglect of the officer or his clerk, the title of the taxpayer is not divested by the sale.    People v. Registrar, etc., 114 N. Y. 19, 20 N. E. Rep. 611.    The affidavit furnished by the lessee was not sufficient evidence of the fact of service.    People v. Brown, 55 N. Y. 180; Cagwin v. Hancock, 84 N. Y. 532.    Indeed, in People v. Chapin, 104 N. Y., at page 371, 5 N. E. Rep., at page 64, wherein the court held that the comptroller to an extent acted judicially in certain tax matters, it disclaimed all idea of holding such a determination conclusive.    The court said:

"The owner of the land is not a party to the proceeding, nor is he permitted in this way to test the validity of the sale or tax.    In such a controversy the purchaser would have an interest and a right to its protection in the courts by the usual course of legal proceedings.    The statute contains no intimation of a legislative purpose to deprive him of that right.    It gives no process to bring him in; confers no power to compel witnesses.    In short, it creates no court; provides for a single transacton to which the comptroller and the purchaser are the only parties."

These cases all demonstrate that, while an affidavit may suffice to satisfy the comptroller and authorize his certificate, yet, at the

trial, common-law evidence of service of the written notice to redeem must be furnished that the propriety of it might be tested by legal rules, and any fraud in respect to the attempted service detected and defeated. It was certainly not intended to conclude the owner by the ex parte affidavit filed with the comptroller, whether true or false, or by the certificate of that official founded thereon, in the absence of the owner, and without affording him any hearing whatever thereon. No one can be condemned, nor can his property be taken or its title divested, without his day in court,—a hearing of some kind,—and an opportunity to defend against the charge which is calculated to produce these results.

The defendants offered to prove irregularities in the service of the written notice to redeem, fatal to the plaintiff's case, and the evidence was excluded under exception, upon the ground that the certificate of the comptroller was conclusive. For this error the verdict in favor of the plaintiff must be set aside, and a new trial ordered, with costs to abide the event. The various objections have been fully gone over in the hope that the new trial may to some extent be simplified thereby.