(7 App. Div. 359)

NE–HA–SA–NE PARK ASS'N v. LLOYD.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. TAXATION—ASSESSMENT—DUTIES OF SUPERVISORS.
    The board of supervisors of a county acts judicially in determining taxes, and extending them on the tax roll; and therefore, where it adjourns without completing the roll, a supervisor has no authority to perform any of the omitted acts, as judicial duties cannot be delegated.

2. SAME—CURATIVE STATUTE.
    Where the county board of supervisors delivered an incomplete tax roll to the supervisor of the town, and adjourned, its action was not merely

irregular, but was void; and the defect in the title of lands sold for such taxes is not cured by Laws 1893, c. 711, § 12, providing that a tax deed is conclusive evidence that all prior proceedings were regular.

Appeal from judgment on report of referee.

Action by the Ne-ha-sa-ne Park Association against Aaron Lloyd. The complaint was dismissed on the merits, with costs, and plaintiff appeals.     Reversed.

Plaintiff's complaint alleged absolutely that the plaintiff was the owner in fee of the premises in question, to wit, all that tract or parcel of land situate in the town of Wilmurt, county of Herkimer, and state of New York, described as follows, viz.: "Totten and Crossfield's purchase, township 41, being all that part thereof situate in the county of Herkimer, N. Y., containing two thousand four hundred sixteen and eight-tenths (2,416.8) acres of land, more or less." The complaint alleged, and the answer admitted, that the land was wild forest land, situate upon the eastern shores of Big Moose Lake. Plaintiff acquired title in June, 1894, and commenced this action December 14, 1894. Plaintiff offered a mass of evidence to establish its title and ownership to the premises, and also offered evidence tending to show that there was invalidity in the proceedings leading to the deeds under which the defendant claimed title. The referee found as a conclusion of law that the tax deed from the comptroller to the defendant, dated April 1, 1884, "is conclusive evidence that the sale and proceedings prior thereto, from and including the assessment of the lands and all notices required by law to be given previous to the expiration of the time allowed for redemption, were regular, and regularly given, published, and served, according to the provisions of all laws directing and requiring the same, or in any manner relating thereto; that the statute (section 12, c. 711, Laws 1893), operating as a rule of evidence, cures every act or omission in the entire tax proceedings which the legislature, by prior enactment, might have required or dispensed with, and that such statute is constitutional; *, * * that none of the defects imputed to the proceedings resulting in such deed are such as affect the jurisdiction upon constitutional grounds; the jurisdictional defects assailable must be constitutional defects, or such as deny notice and opportunity to be heard; that each and every of the defects for which the defendant's title is assailed is in the doing or omitting of some act which the legislature might, by previous enactment, have authorized or dispensed with; that the said deed from the comptroller to the defendant vested in the defendant, the grantee therein, an absolute estate in fee simple to the premises conveyed, subject to all claims which the state may have thereon for tax or other liens or incumbrances."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles E. Snyder, for appellant.

H. C. Hunter and Theo. F. C. Demarest, for respondent.

HARDIN, P. J.     The learned referee, after stating numerous facts relating to the plaintiff's title, seems to have assumed that the evidence was sufficient to warrant a finding that the plaintiff had, through its several conveyances, received title to the property in question, and that the defendant's claim rested upon its subsequent and superior title, as stated in the further findings made by the referee.     The referee seems to place the defendant's right to recover in virtue of the comptroller's deed of April, 1884, executed to the defendant, and the validity claimed to be given to such deed by chapter 427 of the Laws of 1855, and the purchase by the defendant at the sale in November, 1881.     The referee has found, viz.:

"That the tax sale of November, 1881, resulting in the deed last aforesaid to the defendant Lloyd, was for taxes of 1869, 1871, 1872, 1873, and 1874; the same being: For 1869, town and county tax, $2.84; school tax, $2.54,—both rejected in 1869 and 1870, and admitted in 1871, with interest added. For 1871, town and county tax, $6.74; school tax, $1.81. For 1872, town and county tax, $9.69; highway tax, $4.73; school tax, $1.52. For 1873, town and county tax, $19.85; school tax, $1.73. And for 1874, town and county tax, $11.81. Total taxes, $63.26; interest aggregated thereon to November 10, 1881, $49.38; advertising, $1.00,—making a total for which the lands were sold of $113.64."

In order to determine whether the deed given to the defendant, under which he asserts title, was valid or not, it is necessary to consider the 28th, 29th, 30th, 31st, 32d, and 33d findings of fact made by the learned referee. They are as follows:

"Twenty-Eighth. That the assessment roll of the town of Wilmurt for 1871 was not sworn to by the assessors of the town. The assessors merely certified, but did not swear to, the form annexed thereto; and for the years 1872 and 1874 the oath of said assessors to said rolls is to the effect that they 'certify,' instead of that they 'depose and swear,' as required by statute.

"Twenty-Ninth. That the tax warrants for the years 1869, 1871, and 1872 bore the corporate seal of the board of supervisors only, and were not under the 'seals of the board of supervisors or a majority of them.'

"Thirtieth. That for the years 1869, 1871, and 1872, respectively, after the board of supervisors had equalized the valuations, determined the total amount to be raised, and the rate per cent. of taxation for each town, they executed the collector's warrant, delivered the same attached to the roll to the supervisors, and adjourned sine die, without having applied the ratio or percentage of the tax to each individual or parcel of nonresident lands assessed, or, as commonly called, without extending the tax, which work was subsequently done by the supervisor of the town of Wilmurt as to the persons and property assessed in that town, including the taxes in question for those years, respectively.

"Thirty-First. That the assessment rolls of the town of Wilmurt, so far as they affected the lands in question for the years 1869, 1870, and 1871, had the same entered thereon, in the form and manner following, viz.:

| Year. | Description. | Number of Acres. | Valuation. | Town and County Tax. | Highway Tax. | School Tax. |
|---|---|---|---|---|---|---|
| 1869 | Totten and Crossfield Purchase, Towns'p 41 All that part in Wilmurt...................... | 937 | 141 | 2.13 | | 2.01 |
| 1870 | Totten and Crossfield's Purchase, Towns'p 41 All that part in Wilmurt, Acres correct as sent from your office....... | 2250 | 338 | 7.77 | 4.49 | 1.00 |
| | Reject'd Tax of 1869 Interest added ..... ................. | 937 | 141 | 2.39 | | 2.26 |
| 1871 | Totten and Crossfield's purchase, Towns'p 41, All in Wilmurt... | 2250 | 338 | 6.43 | 4.22 | 1.81 |
| | Reject's Tax of 1869. ............. | 2250 | 338 | 2.70 | | 2.54 |

"Thirty-Second. That the tax of 1869 was returned by the county treasurer as unpaid, and was rejected by the comptroller, the cause of the rejection being stated in his return as, 'Acres incorrect. Give survey.' The tax of 1870 was returned and rejected, the cause of the rejection being stated by the

comptroller in his return as 'Exempt from highway taxes, caused by Hamilton, Herkimer and Lewis Road. Make the acres what they should be, 2250.' The tax of 1871 was also returned and rejected, and in his return the comptroller stated the cause as, 'Exempt from highway tax, but liable to special road tax for Hamilton, Herkimer and Lewis Road.'

"Thirty-Third. That the board of supervisors of Herkimer county, in the years 1870 and 1871, respectively, adopted resolutions to the effect 'that the bad tax be added to the schedules of the several towns, as reported by the county treasurer.' It does not appear that the tax in question for 1869 or 1870 was in fact added to the schedule of Wilmurt, or otherwise assessed upon the whole town. On the contrary, the rejected tax of 1869 was added to the roll of 1870, and, being again rejected, was added to the roll of 1871, by the supervisor of the town, after the final adjournment of the board, and subsequently was admitted by the comptroller, and entered into the amount for which the premises were sold upon the tax sale of 1881, which resulted in the defendant's deed, of which Exhibit C, annexed to the complaint, is a copy."

In Bellinger v. Gray, 51 N. Y. 610, it was held that the duties of supervisors in examining assessment rolls, and equalizing the valuation of real estates in the different towns, "are quasi judicial, and cannot be delegated, but must be performed by the boards as such; the rolls must be completed before the warrants required to be issued are annexed thereto"; and that where warrants were issued in blank, and filled up after the adjournment, "that the assessment rolls and warrants were void." The doctrine of that case was approved in People v. Hagadorn, 104 N. Y. 523, 10 N. E. 891, and in People ex rel. Hamilton Park Co. v. Wemple, 67 Hun, 495, 22 N. Y. Supp. 497. The latter case was reversed in 139 N. Y. 240, 34 N. E. 883, but upon another point. See, also, People v. Chapin, 105 N. Y. 309, 11 N. E. 510.

When the comptroller rejected the tax of 1869, he made an adjudication that the tax was no tax, and in doing so he acted judicially. People v. Campbell, 144 N. Y. 478, 39 N. E. 397; People ex rel. Chase v. Wemple, 80 Hun, 504, 30 N. Y. Supp. 503. Besides, the action of the board of supervisors in three times directing that the tax of 1869 be charged against the town, and not upon the land, was also a judicial act. People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891. It is difficult to see how a supervisor with no statutory authority can relevy a tax against the direction of the board of supervisors, as he apparently attempted to do after the adjournment of the board of supervisors. The board adjourned in 1869, without completing the roll, and without inserting any tax in the fifth column opposite any land therein contained, and the supervisor had no power to complete the roll by extending the tax. The board of supervisors, by adjourning and delivering the incomplete roll to the supervisor, performed, not an irregular act only, but one wholly unauthorized by law; and the supervisor, by attempting to insert the land upon the roll, perpetrated an act entirely without jurisdiction. It is well settled that a judicial function cannot be delegated. In re Hearn, 96 N. Y. 378. The referee has clearly found that the taxes in question were not determined, ascertained, or extended by the board of supervisors of Herkimer county, but by the supervisor of the town of Wilmurt, after the final adjournment of the board.

Walters, a witness called for the plaintiff, testified that he was supervisor of the town of Russia in 1869, and that he attended the meetings of the board, and that he signed the collector's warrant, and then he adds: "The figures '$2.13,' in the column headed 'Town and County Tax,' and the figures '$2.01,' in the column headed 'School Tax,' in the original assessment roll of the town of Wilmurt for the year 1869 (Exhibit 42), opposite the entry, 'Totten and Crossfield's Purchase, Township 41, All that part in Wilmurt, 937 acres; assessed value, $141,' were not inserted during the session of the board of supervisors." This witness seems to be corroborated to some extent by what is stated by the witness Wilkinson, at folio 198, etc.; and to the like effect is the testimony of Munson Bunnell, at folio 235.

However, it is insisted in behalf of the respondent that all the irregularities and assumptions of power stated by the referee were cured by the legislative acts of 1885 and 1893, and attention is called to the cases of People v. Turner, 117 N. Y. 227, 22 N. E. 1022, and People v. Turner, 145 N. Y. 451, 40 N. E. 400. In the first case the irregularity complained of was the omission of the assessors in making assessments to give notice of a review of the assessment, or to hold a meeting for that purpose as required by the statute. In the latter case the irregularity complained of was that the tax sale was based on an assessment verified before the third Tuesday of August, and also that the assessors omitted to meet on the third Tuesday of August. It was held that these omissions were not jurisdictional defects, but simply irregularities, and that, because the owner had a remedy by an opportunity to be heard by appeal to the board of supervisors, the curative act was sufficient to remove the irrgularities. The defects, insufficiencies, and unwarranted assumptions of power in the case in hand seem to be much more grave, and it may very well be suggested that the case is brought within the doctrine laid down in Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932, and Joslyn v. Rockwell, 128 N. Y. 334, 28 N. E. 604.

In Cromwell v. MacLean, supra, it was said that:

"Where the proceedings are so defective as to result in no valid assessment, and where a sale under it conveys no title, thus leaving in the original owner his title or interest unimpaired, the legislature has no power to validate the sale, and thus transfer such title to the purchaser at the tax sale."

The foregoing views lead to a reversal of the judgment from which the appeal is taken, together with the order for an additional allowance.

Judgment and order reversed, and a new trial ordered, with costs to abide the event. All concur.