(25 Misc. Rep. 207.)

### NE–HA–SA–NE PARK ASS'N v. LLOYD.

(Supreme Court, Special Term, Herkimer County. October, 1898.)

1. DEEDS—DESCRIPTION—SUFFICIENCY.

    A deed calling for a certain number of acres, to be laid out as nearly as may be in a square, formed in the corner of a township in the shape of a right-angle triangle, is not void for uncertainty, where the acreage called for is contained in a pentagon obtained by drawing lines perpendicular to the sides of the triangle from points equidistant from the vertex of the right angle to the hypothenuse.

2. SAME—TAXATION.

    A tax deed calling for all of a certain township, consisting of an undivided 2082 acres, after deducting an undivided 468½ acres redeemed by E., is not void for uncertainty, where the identity of the redeemed portion can be made certain by partition, as a redemption of such an undivided portion is authorized by 3 Rev. St. (Birdseye's 2d Ed.) p. 3122, § 127.

3. SAME—CONSTRUCTION.

    One claiming under a tax deed calling for a certain number of acres, after deducting an undivided 468½ acres redeemed by E., is not precluded from claiming the part redeemed under another deed, on showing that the title never vested in E., since the reference to it in the tax deed is limited to a reservation of the amount conveyed thereby.

4. QUIETING TITLE—EVIDENCE—ADMISSIBILITY.

    In an action to remove a cloud on title, deeds procured by plaintiff to all the land in controversy pendente lite are admissible, where he had a

tax title to the land when the action was commenced, and was in actual possession of a part of it.

5. TRUSTEE'S DEED—FAILURE TO CONVEY—PRESUMPTIONS.
   Where there was no evidence that a trustee directed to sell land for the benefit of creditors within a year had conveyed it 25 years thereafter, and the records showed no conveyance by him, a finding that he had never made a conveyance was sustained, under the presumption that conditions proved to exist are presumed to continue.

6. TAX SALE—OPERATION OF DEED—ILLEGAL TAXES.
   A tax deed conveys no title, where the tax for which the land was sold was levied without legal authority.

7. HIGHWAY TAXES—POWER TO LEVY.
   Laws 1853, c. 347, § 2, as amended by Laws 1859, c. 451, conferring authority on commissioners to levy a highway tax on all of a township in one county, does not authorize them to levy such tax on any part of such township in another county.

Action by the Ne-ha-sa-ne Park Association against Aaron Lloyd for the cancellation of two tax deeds alleged to be clouds on plaintiff's title to certain land.   Judgment for plaintiff.

Charles E. Snyder, for plaintiff.
Theo. F. C. Demerest and Harry H. Simpson, for defendant.

WRIGHT, J.   The land in question consists of about 2,550 acres, situated in the Adirondack forest, and is that part of township 41 of Totten and Crossfield's purchase which lies in Herkimer county.   It all lies in the northwest quarter of said township, except about five acres, which lie in the southwest quarter thereof.   The tract is in a triangular form.   The defendant contests the validity of the plaintiff's title, and insists upon the validity of his own.   The plaintiff claims under four separate sources of title, called, respectively, the "Benedict Title," the "Mead Title," the "Macomb Patent," and the "Shaw Title."

The Benedict title, covering 1,900 acres of the land in question, originated in a conveyance from the comptroller to Benedict, July 9, 1855. The defendant claims that this deed is "void for uncertainty in the description of the land which the same purported to convey."   The description reads as follows:

"That tract, piece, or parcel of land situate in the county of Herkimer, viz. nineteen hundred acres, to be laid out at the expense of the party of the second part in a square form, as nearly as may be, in the northwest corner of that portion of township number forty-one of Totten and Crossfield's purchase which lies in the county of Herkimer."

The portion of said township in which said land is to be laid out is a right-angle triangle, but not equilateral.   The two lines forming the angle of the said triangle are in length, respectively, 170.95 chains and 263.23 chains, and the hypothenuse is 313.87 chains.   It contains about 2,550 acres, as before stated, and is of such size and shape that it is impossible to lay out therein the said 1,900 acres in the form of a square.   But the description does not require a square form, and contemplates the contingency of such impossibility, and provides for an approximation.   It is satisfied with the nearest possible geometrical approximation to a square form, placing every part of the required

quantity of land as near as possible to the said corner. This is a mathematical problem, simple, and capable of absolute certainty of solution. It can be solved by making one angle of the approximate square coincident with the right angle of said triangle, and, commencing at said right angle, using the two lines of the triangle along equal distances from said right angle, viz. 160.60 chains for two sides of the required figure, then commencing at the said two points equidistant from said right angle in said lines, and running thence two lines at right angles, respectively, with each of said two sides above given of said figure, towards the hypothenuse of said triangle, until they severally intersect the same. This figure will embrace 1,900 acres, and will possess five of the eight qualities of a square, viz. three right angles and two equal sides, and every part of the land therein will be as near as possible to the required corner. This geometrical figure, although a pentagon, may be considered as a square having one corner cut off. No other figure can be constructed in said triangle which will possess so many of the qualities of a square as this one possesses, and embrace the required quantity of land nearest to the said northwest corner. Said description possesses, therefore, absolute mathematical certainty, and the deed is valid. The plaintiff traces from this deed of July 9, 1855, title to itself of an undivided half of said 1,900 acres, subject, however, to the Mead tax title, hereinafter mentioned.

The Mead Title. After the conveyance to Benedict, the comptroller, on April 23, 1864, executed a tax deed to William K. Mead, conveying a larger interest than the Benedict deed in the land in question, being "the following tract, piece, or parcel of land, situate in the county of Herkimer, viz. undivided two thousand and eighty-two (2,082) acres of land, * * * being what remains of that part of township number 41 lying in said county after deducting therefrom 468½ acres undivided in northwest quarter, paid by A. F. Edwards, in Totten and Crossfield's purchase." The defendant objects to this deed because of uncertainty of description. The whole of that part of said township which lies in Herkimer county is conveyed except an undivided interest of 468½ acres lying in the northwest quarter of said township, redeemed by one A. F. Edwards. The redemption of an undivided portion as above recited is provided for by statute. 3 Rev. St. (Birdseye's 2d Ed.) p. 3122, § 127. There is certainty of interest in this conveyance, and, as to the identical acres, it may be remarked that "that is certain which may be made certain"; and certainty can be made simply by an action of partition. The above objection, therefore, is not forceful. Neither are the objections as to the tax proceedings upon which this conveyance is founded forceful. This conveyance is, therefore, valid for all that part of said township above mentioned lying in Herkimer county, except said undivided interest in the northwest quarter, to the extent of 468½ acres, which makes the amount conveyed to be a trifle over an undivided four-fifths interest in the land in question. No title, however, to said undivided 468½ acres is shown to have ever vested in said A. F. Edwards. The legal force of the above-mentioned clause in the Mead deed with reference to that portion is limited solely,

so far as this action is concerned, to a reservation of that amount of land from the said conveyance. For title to the above-mentioned undivided 468½ acres, the plaintiff falls back upon the Macomb patent, which long antedates the above-mentioned tax deeds.

The Macomb Patent. At the time of the commencement of this action, the plaintiff was in actual possession and occupation of a six-acre parcel of said land in question. After the commencement of this action, and before this trial, the plaintiff obtained what is termed the "Macomb Patent" or "Edgar Title" to the entire land in question, which title goes back to a patent granted by the state to Alex. Macomb, executed by Gov. Clinton February 28, 1787. This title passed from Macomb down through William Edgar, Mrs. Jerome Napoleon Bonaparte, and others, to the plaintiff. If the Benedict tax title and the Mead tax title, above mentioned, were invalid, the plaintiff would take a good title to the whole property in question under this Macomb patent, as against the defendant under his tax deeds hereinafter mentioned. The land conveyed is described in said patent as being "part of the Indian purchase made by Edward and Ebenezer Jessup and their associates, under a license granted to Totten and Crossfield." Objection was raised by the defendant to the introduction of the evidence of the Macomb, or, as otherwise called, the Edgar, title, on the ground of incompetency because the deeds were obtained pendente lite. But the plaintiff, being the owner of the above-mentioned tax titles, and being in actual possession of a part of the land at the time of the commencement of the action, had a right to perfect his title to the whole property before trial; and equity will grant relief upon the facts as they exist at the time of the trial. Church v. Mott, 7 Paige, 77; Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350; Pond v. Harwood, 139 N. Y. 120, 34 N. E. 768.

The Shaw Title. This relates to a five-acre parcel in the southwest quarter of said township. Alexander Macomb, above mentioned, executed a mortgage on said five-acre portion with other property, and the land passed by foreclosure on January 21, 1811, into the hands of one Gabriel Shaw, who afterwards conveyed this, with other lands, to John Jacob Astor and others, in trust for the payment of the debts of the firm of Carp, Ellis & Shaw. The deed to said trustees recites that Gabriel Shaw held the land in trust for the benefit of himself and his two partners, Ellis and Carp. The assignees were required in the deed to dispose of the property within one year. It does not appear that said John Jacob Astor and others, as said trustees, ever executed any conveyance of said land; and the county clerk's records wherein the land is situated show no record of such conveyance. This proof, and all the other circumstances, considered in connection with the legal presumption that conditions proved to exist are presumed to continue to exist, authorize the finding that said trustees never executed their trust as to this property; and, over 25 years having elapsed since the trust was created, the estate reverted to the assignor, Gabriel Shaw, in his capacity as trustee for himself and his partners, Ellis and Carp. 3 Rev. St. (Birdseye's 2d Ed.) p. 2617, § 90. Said Gabriel Shaw died in England in the year 1851, intestate.

Twenty-five years had elapsed since said prior trust was created in him; therefore, one-third interest in said parcel reverted to himself personally, and one-third to each of his said partners, Ellis and Carp, and their respective heirs, devisees, or assignees. The plaintiff has obtained the title which the heirs of Gabriel Shaw owned in said parcel. This would leave a two-thirds interest in said parcel still outstanding; but the subsequent Mead tax title of April 23, 1864, above mentioned, conveys that interest as well as the Gabriel Shaw interest. The plaintiff, being possessed of the above-mentioned Benedict title, the Mead title, and the Macomb patent (or Edgar title), is the owner of the lands in question.

The defendant claims title to the land in question under two tax deeds from the state subsequent in date to the plaintiff's Benedict title and Mead title and the Macomb patent, one of which—the Baker Woodruff deed, dated April 17, 1874—purports to convey the land in question, but in fact conveys no title, for the reason that the tax for which the land was sold was levied thereon without legal authority. It was a highway tax attempted to be levied under chapter 347, § 2, Laws 1853, as amended by Laws 1859, c. 451. These statutes confer upon the commissioners therein named authority to levy a highway tax upon the following described land (among other tracts), viz.: "Also, all of townships four, five, six, seven, and forty-one, of Totten and Crossfield's purchase, in the county of Hamilton." But the land in question lies in that part of said township 41 of said purchase which lies in Herkimer county. The defendant claims that the statute should be construed as if the words "in the county of Hamilton" were struck therefrom, thus conferring upon the commissioners authority to levy the tax upon the whole township 41. There is no ambiguity in the wording of the statute, and there is no legal rule of statutory construction which would sustain the defendant's theory. The other tax deed under which the defendant claims title (that from the state to the defendant, dated April 1, 1884) was declared void by the appellate division on a prior hearing of this case. Association v. Lloyd, 7 App. Div. 359, 40 N. Y. Supp. 58.

Judgment is ordered in favor of the plaintiff according to the terms of its request as stated in the findings, with costs.